UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

BILL WILLIAMS,                          :
                    Plaintiff,          :
                                        :
          v.                            :          No. 5:17-cv-04910
                                        :
CITY OF ALLENTOWN;                      :
KEITH MORRIS; ED PAWLOWSKI;             :
GLEN DORNEY; GAIL STRUSS; and           :
FIVE JOHN & FIVE JANE DOES,             :
                    Defendants.         :
_____

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 6 – Granted**

Joseph F. Leeson, Jr.                                    August 3, 2018
United States District Judge

## I.      INTRODUCTION

Plaintiff Bill Williams, a police officer with the City of Allentown, initiated this civil

rights action against the City and several of its employees after he was reassigned from his

position in the Youth Division to a position in patrol allegedly for informing a subordinate

officer that he could run for political office and for approving this officer's military leave.

Defendants have moved to dismiss the Complaint for failure to state a claim.  For the reasons set

forth below, Defendants' Motion to Dismiss is granted, but Williams is given leave to file an

amended complaint as explained herein.

## II.     BACKGROUND

On November 2, 2017, Williams initiated this action pursuant to 42 U.S.C. § 1983

against the City of Allentown, Keith Morris, who was then Chief of Police of the City of

Allentown Police Department, Ed Pawlowski, who was then Mayor of Allentown, Glen Dorney[1] and Gail Struss, Assistant Chiefs of Police for the City of Allentown Police Department, and five unnamed individuals believed to be officials, agents, employees, or representatives of the City. Williams asserts the following claims: (1) First Amendment retaliation, (2) a Fourteenth Amendment Due Process violation,[2] (3) *Monell*[3] liability, (4) Uniformed Services Employment and Reemployment Rights Act ("USERRA") retaliation, *see* 38 U.S.C. §§ 4301-4335, and (5) and conspiracy under 42 U.S.C. § 1985.

The Complaint alleges as follows. In April 2006, Williams began working for the City of Allentown Police Department as a police officer. Compl. ¶ 21, ECF No. 1. In February 2014, he advanced to a detective in the Youth Division, which consisted of fifteen officers and detectives. *Id.* ¶ 22. In May 2016, through a promotion in the civil service, Williams advanced in rank to the sole Detective Sergeant in the Youth Division. *Id.* ¶ 24. In this new position, Williams supervised all officers and detectives within the Division. *Id.* Williams was supervised by Captain Lake. *Id.* ¶ 36.

Accompanying this advancement, Williams experienced newfound perks consisting of "unique duties and benefits that do not exist in other City of Allentown Police Department sergeant positions, such as patrol," including a "steady day shift," no weekend or holiday assignments, avoidance of midnight shifts, and "use of [a] car from home to work with fuel and

---

[1]  Dorney replaced Morris as the Chief of Police during the events at issue.

[2]  Although not specified in the Complaint, Williams admits in his brief opposing the Motion to Dismiss that Defendants are correct in their characterization of the due process claim as a violation of the Fourteenth Amendment for failing to provide pre-deprivation procedures. *See* Pl.'s Opp. 12, ECF No. 9.

[3]  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that a local government may be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

maintenance benefits." *Id.* ¶ 25.  Additionally, his new position in the Youth Division offered greater prestige, more time with family, and increased income opportunities through overtime and other shifts.  *Id.* ¶ 26.

In January 2017, Williams was approached by a subordinate police officer in the Youth Division, inquiring of the possibility of retaining employment in the City of Allentown Police Department while running for mayor as an opponent of then-mayor Pawlowski.  Compl. ¶¶ 27-28, 34.  Williams "investigated all policies and regulations known to him" to conclude that there was no prohibition from maintaining employment as a police officer while running for mayor. *Id.* ¶ 28.  After conveying this information to the subordinate officer, Williams suggested that the subordinate officer "seek approval from the Chief of Police, Defendant Morris, to confirm his findings."  *Id.* ¶ 30.  The subordinate officer began his campaign for the mayoral position on February 23, 2017.  *Id.* ¶ 32.  Shortly thereafter, Williams granted the subordinate officer's request for USERRA leave "to travel and report for active military duty."  *Id.* ¶ 33.

Upon granting the subordinate officer's USERRA leave, Williams received an order from Captain Lake requesting "documentation of the subordinate's military orders," to which Williams acquiesced.  *Id.* ¶ 36.  On March 2, 2017, Williams received an order from Captain Lake to appear before Chief of Police Morris.  *Id.* ¶ 37.  Upon entering the Chief's office, Williams observed that Assistant Chief Dorney and Assistant Chief Struss were also present.  *Id.* ¶ 38.  In the meeting, Morris informed Williams that March 2, 2017, would be his last day in the Youth Division and reassigned him to patrol, beginning with a night shift on March 8, 2017.  *Id.* ¶ 41.  When reporting for his first night shift on March 8, 2017, Williams was informed that an internal disciplinary investigation had commenced concerning his grant of USERRA leave to the subordinate officer.  *Id.* ¶ 43.

Soon after, Williams "filed a grievance for the position change." Compl. ¶ 44. In his new position on patrol, Williams works weekends and nights and no longer has the use of the city-owned car and gas card with maintenance benefits "for use … between home and work." *Id.* ¶ 41. Williams believed Defendants were retaliating against him for his association with the subordinate officer, who was challenging Pawlowski in the mayoral election. *Id.* ¶ 46. In July, August, and September 2017, Williams met with the new[4] Chief of Police Dorney and the Director of Human Resources to discuss the matter. *Id.* ¶ 47. In mid-September, the City of Allentown made an offer to Williams to settle the grievance and avoid arbitration. *Id.* ¶ 48. Williams, already skeptical of the offer, did not accept before the City of Allentown revoked the offer upon instruction from Pawlowski. *Id.* ¶¶ 48-49. Arbitration on the grievance was not scheduled. *Id.* ¶ 49.

In response to Williams's Complaint, Defendants filed a Motion to Dismiss all claims for failure to state a claim. They also argue that the individual Defendants are entitled to qualified immunity.[5]

## III.    STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if

---

[4]    Williams fails to assert facts regarding this change. For example, Williams does not inform the Court of when the change occurred or the reason for the switch.

[5]    Because there are insufficient facts to state a claim, resolution of the qualified immunity defense is premature. *See Spell v. Allegheny County Admin.*, No. 14-1403, 2015 U.S. Dist. LEXIS 36903, at *17-18 (W.D. Pa. Mar. 23, 2015) (determining that because there was no factual basis for the § 1983 claims, there was no need to address qualified immunity). This argument is therefore denied without prejudice.

"the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff

stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to

state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d

Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    ANALYSIS

### A.    Williams fails to state a First Amendment retaliation claim because he acted in his official capacity, not as a private citizen.

Defendants assert that Williams has not established a valid First Amendment retaliation

claim because the information he provided the subordinate officer was given as part of

Williams's official role, not as a private citizen, and is therefore not protected by the First

Amendment. *See* Defs.' Mot. Dismiss Br. 7-8, ECF No. 6. Williams responds that his speech is

protected because his job did not require him to give advice to the subordinate officer and,

additionally, that he spoke out against, and grieved, the perceived First Amendment violation.

*See* Pl.'s Opp. 9-11. Williams contends that his First Amendment claim is further based on

freedom of association, and that Defendants have not challenged this component of his claim.[6] *See id.*

To state a First Amendment retaliation claim under 42 U.S.C. § 1983 asserting a violation of free speech, "a plaintiff must establish: (1) he engaged in First Amendment protected activity, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by the plaintiff's protected activity." *Rossiter v. City of Phila.*, 674 F. App'x 192, 196 (3d Cir. 2016) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). For a public employee, such as a police officer, to fall under First Amendment protected activity, the individual must also show: (1) he "spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently'" than other persons of the general public. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti v.Ceballos*, 547 U.S. 410, 417-18 (2006)).

When acting in an official capacity, a public employee does not speak as a citizen and therefore does not have a First Amendment right. *See Hill*, 455 F.3d at 241-42; *see also Garcetti*, 547 U.S. at 415-17 (holding that when public employees speak "pursuant to official duties," they are not acting as citizens, and do not have a personal interest in the content of their speech). Accordingly, public employees are not shielded from employer discipline when their speech is made while performing job duties. *See Hill*, 455 F.3d at 423.

In *Garcetti*, a supervising deputy district attorney authored a memorandum discussing the misrepresentations and inaccuracies in a search warrant affidavit used in an ongoing case, and

---

[6] Williams is incorrect in asserting that Defendants have not challenged his freedom of association claim because, as will be discussed below, the private citizen requirement is equally applicable to this claim.

recommended dismissal of the prosecution. *See Garcetti*, 547 U.S. at 413-14. Despite the recommendation, the case was not dismissed. *Id.* The attorney brought a civil rights action alleging that after these events, he was subject to a variety of forms of employment retaliation, including "reassignment from his calendar deputy position to a trial deputy position, transfer to another courthouse, and denial of a promotion." *Id.* at 416. The United States Supreme Court rejected "the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties." *Id.* at 426 (holding that the employee did not have a constitutional claim).

Similar to the supervising deputy district attorney in *Garcetti*, when Williams told the subordinate officer that no policy impeded the officer's ability to run for mayor while being employed by the City of Allentown Police Department, Williams did so not as a private citizen, but in his official role. The subordinate officer had gone to Williams in his official capacity as the supervising officer in the Youth Division. *See Garcia v. Newtown Twp.*, 819 F. Supp. 2d 416, 422 (E.D. Pa. 2011) ("[T]he 'proper inquiry' into what are an individual's official duties 'is a practical one'" such that "'[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.'" (quoting *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009))). After researching the issue, Williams not only cleared the subordinate officer to run for mayor while maintaining police employment but also referred him to the Chief of Police to confirm the finding, all in relation to his official role. *See Garcia*, 819 F. Supp. 2d at 422 (holding that speech is related to official duties if it corresponds to special knowledge or experience acquired through a job). Williams's speech (informing the subordinate officer that he could run for mayor) was therefore not made as a private citizen and is not protected under the

First Amendment. The free speech component of the First Amendment retaliation claim is therefore dismissed.

The First Amendment retaliation claim based on Williams's right to freedom of association is also dismissed. To assert a § 1983 retaliation claim under the First Amendment based on the right to freedom of association, the plaintiff must show (1) the plaintiff was engaged in constitutionally protected conduct, which (2) was a substantial or motivating factor in the government employer's (3) adverse employment decision. *See Killion v. Coffey*, 696 F. App'x 76, 78 (3d Cir. 2017). Where a plaintiff's free association claim is closely linked to the free speech claim, as it is here, both the public concern and the private citizen requirements apply. *See id.* (citing *Gorum v. Sessoms*, 561 F.3d 179, 185 n.4 (3d Cir. 2009)).

According to the Complaint, Williams's only alleged association with the subordinate officer was when: (1) the subordinate officer asked Williams, his supervising officer, about whether he was prohibited from running for mayor, (2) Williams advised him that there was no prohibition, and (3) the subordinate officer requested USERRA leave. *See* Compl. ¶¶ 27, 29-30, 33-34. This alleged association was limited to "activity [that] might be considered part of a public employee's official duties—and thus not exercised in one's capacity as a private citizen." *See Killion,* 696 F. App'x at 78. Williams's association with the subordinate officer is therefore not protected by the First Amendment and this component of the First Amendment retaliation claim is also dismissed.[7]

---

[7] To the extent that the association claim might be based on Williams's political association, the Complaint is devoid of any allegations to suggest that Williams agreed with the subordinate officer's political views. *See Hill*, 455 F.3d at 243 (explaining that for a public employee to state First Amendment retaliation claim based on a political association, the plaintiff must allege: (1) he works for a public employer in a position that does not require a political affiliation; (2) he *maintained a political affiliation*, and (3) his political affiliation was a substantial or motivating factor in the adverse employment decision).

Finally, to the extent that Williams's First Amendment retaliation claim is based on his filing of a grievance contesting his removal from the Youth Division,[8] this is not constitutionally protected conduct under the Speech Clause or the Petition Clause. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 392 (2011) (holding that a petition complaining about a change in the employee's duties does not relate to a matter of public concern and is therefore not protected by the First Amendment); *Garcetti*, 547 U.S. at 420 (holding that "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). Furthermore, Williams fails to allege any adverse action resulting from filing a grievance, as the withdrawal of an offer before its acceptance to settle his grievance is not sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. His allegations in this regard are therefore insufficient to state a constitutional claim.

As to Williams's allegations that after filing a grievance he "expressed *to* the defendants" that they removed him from the Youth Division in retaliation for his association with the subordinate officer, *see* Compl. ¶ 46, he was not speaking on a matter of public concern. *See Connick*, 461 U.S. at 148 (holding "that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior" and finding that the employee "did not seek to inform the public" of his complaint). Additionally, as previously explained, the withdrawal of an offer to settle a grievance before its acceptance is not an adverse action. There are also no allegations that the

---

[8]    The grievance was filed "for the position change." Compl. ¶ 44.

offer was withdrawn based on Williams's speech complaining to Defendants about his removal from the Youth Division. Rather, the only reasonable inference from the allegations in the Complaint is that the settlement offer was withdrawn based on Williams's speech and association with the subordinate officer, which as discussed herein was not protected activity.

For all these reasons, Williams failed to state a retaliation claim under the First Amendment, and Count I is dismissed. Although it appears an amendment would be futile with respect to the information Williams gave to the subordinate officer because it was provided in his official capacity, this Court cannot conclude that no additional allegations could save parts of the First Amendment retaliation claim. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002) (holding that a court should grant a plaintiff leave to amend a deficient complaint unless an amendment would be inequitable or futile). The First Amendment retaliation claim is therefore dismissed without prejudice.

**B.      The due process claim is dismissed because Williams fails to allege facts to show he had a protected property interest.**

Defendants argue that Williams's due process claim fails as a matter of law because he was not deprived, either actually or constructively, of any property interest requiring a pre-deprivation hearing.[9] Defs.' Mot. Dismiss Br. 10-12. In response, Williams asserts that he has alleged a deprivation of property interests including loss of overtime pay, loss of vehicle use and gas card outside official operations, a change in responsibilities, and a loss of vacant weekends and nights, which are indicia of a constructive change in rank. Pl.'s Opp. 15-16.

The Fourteenth Amendment of the Constitution restricts a state from "depriving persons of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. To state a

---

[9]      *See* Pl.'s Opp. 12. ("[D]efendants correctly note that the cause of action is a violation of the Fourteenth Amendment, and for failing to provide pre-deprivation procedures.").

violation of procedural due process under 42 U.S.C. § 1983, a two-part analysis is applied:

(1) whether the individual's interest is protected under the Fourteenth Amendment as life,

liberty, or property, and (2) whether the pre-deprivation procedures provided complied with due

process of law. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Procedural due process

adapts to the situation at hand. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (holding that due

process is flexible for the situation and that pre-deprivation hearings need not always be held).

　　　"[M]unicipal police officers have a property interest in continued employment."

*Wardlaw v. City of Philadelphia*, No. 09-3981, 2011 WL 1044936, at *5 (E.D. Pa. Mar. 21,

2011) (finding that state law determines whether a property interest is present in government

employment). This property interest arises from the Police Tenure Act ("Act"). 53 Pa.C.S.

§§ 811-816. This Act protects police officers from suspension, termination, or reduction in rank

except for specific reasons. *See Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989)

(holding that a police officer's property interest is embedded in the Police Tenure Act). Here,

because Williams does not assert termination or suspension, he only has a protected property

interest if he suffered a reduction in rank. *See Wardlaw*, 2011 WL 1044936, at *5 (A police

officer's property interest can be deprived through termination, suspension, or reduction in

rank.).

　　　A reduction in rank can be either actual or constructive. *See Guarnieri v. Duryea

Borough*, No. 3:05-CV-1422, 2007 WL 4085563, at *6 (M.D. Pa. Nov. 15, 2007) (citing *Clark*,

890 F.2d at 617). An actual reduction in rank is demonstrated through a change in job title.[10]

*Clark*, 890 F.2d at 618. When there is no such alteration in job title, the court must look to other

---

[10]　　*Accord Cope v. Brosius*, No. 4:12-CV-2382, 2018 U.S. Dist. LEXIS 42815, at *16-19
(M.D. Pa. Mar. 14, 2018) (holding that the police officer had no property interest in the job title
of "Detective").

"traditional indicia of change of rank," including change in pay, alteration of duties that are usually assigned to a lower rank, reduced responsibilities, termination of privileges of rank, and whether the changes are permanent or temporary. *Id.*

Williams, whose job title did not change, complains that his lost opportunity for overtime pay, lost use of a city-owned vehicle and gas card outside official operations, assignment to permanent[11] night shift and holiday work, and removal from a prestigious position amounted to a constructive reduction in rank. His arguments are misplaced. First, Williams does not have a protected interest in overtime pay because the Police Tenure Act does not establish any right to overtime opportunities. *See Skrutski v. Marut*, 288 F. App'x 803, 808 (3d Cir. 2008) (holding that the police officer did not have a protected property interest in the loss of overtime for purposes of due process). Second, Williams's lost use of a city-owned vehicle and fuel card is insufficient to show a protected property interest. *See Cotner v. Yoxheimer*, No. 1:07-cv-1566, 2008 U.S. Dist. LEXIS 51388, at *30-33 (M.D. Pa. July 2, 2008) (finding that the officer, who was unable to take a police vehicle home on his days off, was assigned to far more night shifts than any other officer, and had numerous responsibilities removed, was not constructively discharged). Next, Williams's altered work hours to include weekends and night shifts do not amount to constructive discharge. *See id.*; *see also Henry v. City of Allentown*, No. 12-1380, 2013 U.S. Dist. LEXIS 172792, at *12-13 (E.D. Pa. Dec. 5, 2013) ("Assignment to different duties that are merely undesirable does not constitute constructive demotion if the duties are not of a sort normally given to a lower rank."). Finally, although Williams argues a loss of prestige,

---

[11] The Complaint contains somewhat contradictory allegations as to the hours Williams had to work since being removed from the Youth Division. He alleges, first, that a sergeant on patrol works all three shifts, then he alleges that he lost the benefit of never working nights or weekends, and finally Williams alleges that he works permanent midnight shift. Compl. ¶¶ 25, 41-42. For purposes of deciding the Motion to Dismiss, this Court has construed the facts in the light most favorable to Williams: he works permanent midnight shift.

he fails to allege any facts that would attest to defamation. *See* Compl. ¶ 26*; Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 433-34 (E.D. Pa. 1998) (citing *Paul v. Davis*, 424 U.S. 693, 701-12 (1976) (holding that reputation alone is not a protected interest and suggesting that defamation in the termination of employment may, in some circumstances, trigger the right to a hearing)). It is only when the "employer creates and disseminates a false and defamatory impression about the employee in connection with his termination" that due process requires the employee be given a hearing. *Codd v. Velger*, 429 U.S. 624, 628 (1977). Not only does Williams fail to assert facts that attest to defamatory statements, but he also maintained his employment as a police officer in the City of Allentown.

Accordingly, because the allegations of the Complaint are insufficient to show either actual or constructive reduction in rank, Williams has failed to show that he had a protected property interest to entitle him to due process protection.

Furthermore, even if Williams had a protected property interest, he was not automatically entitled to a pre-deprivation hearing under *Loudermill*.[12] *See Schmidt v. Creedon*, 639 F.3d 587, 589-90 (3d Cir. 2011) (holding only that a police officer is entitled to a hearing pre-*suspension* and pre-*termination*). Rather, in determining what process is due, the court balances the private interests affected by the action, the risk of erroneous deprivation, and the government's interest, including fiscal and administrative burdens, that additional or substitute procedures entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Considering that Williams remained employed without a reduction in salary, his interests were insubstantial. *See Guarnieri*, 2007 U.S. Dist.

---

[12] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985) (holding that when a pre-deprivation hearing is required, the hearing need not absolutely resolve the deprivation; rather, it must provide a preliminary check on the situation and disputing sides- the hearing is to determine whether "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action").

LEXIS 84580, at *19-20 (finding that if the police chief had a protected property interest, he was not entitled to a pre-deprivation hearing because his interest in the duties and responsibilities of his job was insubstantial).  On the other side of the balance, the City "has an interest in deciding how to operate its police force."  *Cope*, 2018 U.S. Dist. LEXIS 42815, at *20-21.  Additionally, the risk of erroneous deprivation was low because Williams had access to the grievance process in the collective bargaining agreement, which he used.  *See id.* at *21-22; Compl. ¶ 44.  Due process therefore did not require a pre-deprivation hearing.[13]

The due process claim is dismissed without prejudice, as this Court cannot conclude that an amendment would be futile.

### C.    Williams fails to state a claim against the City for *Monell* liability for a violation of procedural due process.[14]

Defendants argue that because Williams failed to state a cognizable claim for a violation of his constitutional rights, his *Monell* claim must also be dismissed.  Additionally, they assert that the Complaint contains only conclusory statements to support the *Monell* claim and fails to

---

[13]    The due process claim is also insufficient as to Pawlowski because there are no allegations that he had any involvement in the decision to remove Williams from the Youth Division and to deny him a pre-deprivation hearing, *see* Compl. ¶¶ 39-45, nor are there any allegations of a policy, custom, or practice in this regard, *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining the two ways in which a state actor may be liable for the unconstitutional acts of a subordinate: (1) he participated in violating the plaintiff's constitutional rights, directed others to violate them, or had knowledge of and acquiesced in the the unconstitutional conduct; or (2) he is a policymaker and, with deliberate indifference to the consequences, established and maintained a policy, practice, or custom that directly caused the constitutional harm).

[14]    The *Monell* liability count relates only to an alleged procedural due process violation. *See* Compl. ¶¶ 76-78.  As previously explained, however, Williams fails to sufficiently state a due process claim.  His *Monell* liability claim based on the same underlying constitutional violation must therefore be dismissed.  *See Hill*, 455 F.3d at 245 (dismissing the due process and equal protection claims against the borough because the claims had been dismissed against the individual defendant).  For this reason, *Monell* liability does not attach to any other claim either. Additionally, the remaining claims fail to allege that a policy, practice, or custom caused the injury to Williams.  *See Monell*, 436 U.S. at 694.

allege any facts to show that Morris, Dorney, or Struss was a final policymaker or that

Pawlowski had any involvement with the decision to remove Williams from the Youth Division.

Defs.' Mot. Dismiss 14.  In response, Williams asserts that both Pawlowski and Morris are final

policymakers and that a single act can establish municipal policy.  Pl.'s Opp. 18 (citing *City of

St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (holding that a single act may constitute policy

if a final policymaker officially sanctioned or ordered the act, regarding which there were no

policies not of that official's making constraining the decision)).  Williams does not address

whether Dorney or Struss are final policymakers; rather, he argues that the City may be held

liable by virtue of the actions of Morris and Pawlowski.[15]

"[A] municipality can be found liable under § 1983 only where the municipality itself

causes the constitutional violation at issue. Respondeat superior or vicarious liability will not

attach under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436

U.S. at 694-95).  "[I]t is when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436

U.S. at 694.  "A municipal policy, for purposes of Section 1983, is a statement, ordinance,

regulation, or decision officially adopted and promulgated by a government body's officers."

*Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa.

June 30, 2008) (citing *Monell*, 436 U.S. at 690).  A custom, although not authorized by written

---

[15]     In the absence of any suggestion in the *Monell* claim or in Williams's brief that the City
may be liable based on the actions of Dorney or Struss, this Court focuses on whether Williams
has pled sufficient facts to hold the City liable based on the actions of Morris or Pawlowski.  *See
Brown v. Diguglielmo*, 418 F. App'x 99, 102 (3d Cir. 2011) (stating that where a party is
represented by counsel and fails to respond, a motion may be granted as unopposed); *Dolan v.
PHL Variable Ins. Co.*, No. 3:15-CV-01987, 2018 U.S. Dist. LEXIS 58852, at *24 (M.D. Pa.
Apr. 6, 2018) (granting as unopposed that portion of the motion to dismiss the plaintiffs did not
oppose in their opposition brief); E.D. Pa. L.R. 7.1(c).

law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690. The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("Mere assertion of an entitlement to relief, without some factual 'showing,' is insufficient under Fed. R. Civ. P. 8(a)(2).").

To hold a municipal defendant liable under § 1983 for a single act, the plaintiff must show that: (1) the act violating a constitutional right was officially sanctioned or ordered by the city itself; (2) the municipal official executing the action had final policymaking authority, as determined by state law; and (3) "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *Praprotnik*, 485 U.S. at 123. In establishing final policymaking authority pursuant to state law, the plaintiff must show that the official's decisions are "final and unreviewable." *Hill*, 455 F.3d at 245-46.

Initially, because Williams failed to state a constitutional violation, his *Monell* claim likewise fails. *See Reilly v. Leb. Cnty.,* No. 1:16-cv-1469, 2016 U.S. Dist. LEXIS 176999, at *15 (M.D. Pa. Dec. 21, 2016) (dismissing the *Monell* claim because there was no constitutional violation).

Moreover, it is unclear what single act Williams is relying upon. In the *Monell* claim, Williams alleges that Morris and Pawlowski, "as final decision-maker, deprived plaintiff of his Fourteenth Amendment procedural due process right under color of state law, policy, and practice of the City of Allentown." Compl. ¶ 77. In the very next paragraph, Williams complains about being removed from the Youth Division. *Id.* at ¶ 78. The procedural due process right at issue in this case was the alleged denial of a pre-deprivation hearing before

Williams was removed from the Youth Division. *Id.* at ¶¶ 71-74. The decision to remove

Williams from the Youth Division, on the other hand, is the subject of the First Amendment

retaliation claim. *Id.* at ¶¶ 60, 64-68. Thus, it is not clear what constitutional violation the

*Monell* claim is based on. Moreover, both decisions were allegedly made by Morris six months

before Pawlowski ever became involved. *Id.* ¶¶ 43-49. What single act of Pawlowski could

have caused these deprivations is therefore unclear. Unfortunately, Williams's response to the

Motion to Dismiss only further confuses the issue. In his brief, Williams argues, for the first

time,[16] that the City is liable because Pawlowski stopped negotiations on Williams's grievance

six months after he was removed from the Youth Division. However, Williams does not explain

what constitutional right was involved with this decision. Also, Morris was apparently no longer

the police chief at this time and Williams does not explain what single act of his allegedly set

policy. *Id.* ¶¶ 47-49.

Because Williams fails to explain what single act he is relying on, he has also failed to

support his allegation that the action was undertaken by a final policymaker. This Court

questions whether Morris and Pawlowski can both have "final and unreviewable" authority.[17]

Also, Williams fails to allege any facts that Pawlowski had final policymaking power over police

job placement or that the decision to revoke the settlement offer to Williams, and his related

position change, was final and unreviewable. Moreover, under the single act theory, "[w]hen an

official's discretionary decisions are constrained by policies not of that official's making, those

policies, rather than the subordinate's departures from them, are the act of the municipality."

---

[16]    Although the factual allegations of the Complaint refer to these actions, there are no allegations of any constitutional violations based on them.

[17]    *See* 11 Pa.C.S. § 12001(a) (stating that "[c]ouncil shall fix, by ordinance, the number, grades and compensation of the members of the city police force"); 11 Pa.C.S. § 12007 (providing that "[t]he chief of police shall obey the orders of the mayor").

*Praprotnik*, 485 U.S. at 127.  Whether the single act departed from these policies is therefore unclear.  *See, e.g.* 53 P.S. § 814 (discussing the requirements of a pre-deprivation hearing is required).

The *Monell* claim is dismissed, but without prejudice.  The allegations are so insufficient that this Court cannot determine whether leave to amend would be futile.

**D.     The USERRA retaliation claim is dismissed for failing to assert a protected action under 38 U.S.C. § 4311(b).**

Defendants argue that Williams fails to allege any protected activity under USERRA and therefore has no grounds to bring a retaliation claim in violation of it. Defendants further assert that Williams fails to allege he was subject to any materially adverse employment action given no demotion, termination, or loss of benefits, and that there is no authority to support a third-party retaliation claim.  Defs.' Mot. Dismiss 15-16.  In response, Williams contends that his actions are constitutionally protected as "any person" under USERRA, that his change in hours, loss of non-official use of the car, and loss of overtime constituted materially adverse action, and that third-party retaliation establishes a valid USERRA claim.  Pl.'s Opp. 20-22.

Title 38 of the United States Code § 4311(b) states that no employer shall discriminate against an employee or take "adverse employment action" based on a person (1) taking action "to enforce a protection afforded … under this chapter," (2) "ha[ving] testified or otherwise ma[king] a statement in connection with any proceeding under this chapter," (3) "ha[ving] assisted or otherwise participated in an investigation under this chapter," or (4) "ha[ving] exercised a right provided for in this chapter."  Most case law concerning USERRA matters involves employment discrimination against a member of the military.  *See Carroll v. Delaware River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (explaining USERRA's purpose to protect military men and women in civilian careers by prohibiting discriminatory action based on the

person's military involvement). However, a non-military person may also bring a claim under USERRA for asserted protected activity. In order to state such a claim, "the employee must 'step outside of his or her role of representing the company….'" *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 598-99 (E.D. Pa. 2009) (quoting *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004) (holding that the plaintiff acted in his official capacity as athletic director in alleged protected activity and could not assert claim under Title IX)).

In this case, Williams has not alleged that he is a member of the military, and he fails to allege any facts that would permit the Court to conclude that he was acting in any other capacity than his official duties. Particularly, in granting leave to the subordinate officer under USERRA, Williams was acting within his official role as head of the Youth Division. As the subordinate officer's supervisor, he provided him USERRA leave time, which, outside of his role, Williams would not have been permitted to grant. Furthermore, Williams's immediate supervisor, Captain Lake, sought documentation of the subordinate officer's military orders and USERRA leave. In reporting to his immediate supervisor, Williams retained his official duty status and fails to assert any facts otherwise.

Thus, because Williams did not step outside of his titled role in granting USERRA leave, he is not protected under USERRA, and Defendants' Motion to Dismiss this claim, *see* Compl. ¶¶ 79-89, is granted without leave to amend.[18] *See Bradford v. UPMC*, Civ. A. No. 04-316, 2008 WL 191706, at *4 (W.D. Pa. Jan. 18, 2008) (holding the plaintiff could not assert protected activity because she never stepped outside her role as human resources manager).

---

[18]    In the absence of any protected activity, it is not necessary for the Court to analyze materially adverse employment action and third-party retaliation claims.

### E. Williams fails to allege any meeting of the minds to state a conspiracy claim.

Defendants argue that Williams was not deprived of any constitutional right and that because the City of Allentown acts as a single entity it cannot conspire with itself under the intra-corporate conspiracy doctrine. Defs.' Mot. Dismiss 18. In response, Williams argues that he has asserted valid First Amendment and Fourteenth Amendment claims, that the intra-corporate conspiracy doctrine in relation to municipalities is based on dictum, and that the individuals were acting in furtherance of a conspiracy and not as part of an entity. Pl.'s Opp. 24-26.

Section 1985(3) states that a conspiracy arises when "two or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). To assert a prima facie claim of conspiracy, a plaintiff must plausibly allege facts that show (1) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose," (2) "an overt act done in pursuance of the common purpose," and (3) "actual legal damage." *Schlichter v. Limerich Twp.*, No. 04-CV-4229, 2005 WL 984197, at *10 (E.D. Pa. Apr. 26, 2005). A plaintiff must assert "specific factual allegations of combination, agreement, or understanding among all or between any defendants to plot, plan, or conspire to carry out the alleged chain of events." *Germantown Cab Co. v. Philadelphia Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *10 (E.D. Pa. Aug. 12, 2015) (quoting *Hammond v. Creative Fin. Planning Org.*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)). A complaint must allege particular and exacting facts that demonstrate the "period of the conspiracy, object of the conspiracy, and certain other actions of the alleged conspirators to achieve the purpose." *Id.* (quoting *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)); *see also Chruby v.*

*Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (holding that a plaintiff must allege facts that plausibly suggest a meeting of the minds).

In this case, Williams fails to allege any facts, whether particular or generalized, that plausibly allege any meeting of the minds between Defendants. Specifically, nowhere in the Complaint does Williams allege any agreement or actions between the individual Defendants in pursuit of a common goal to deprive him of constitutional rights. Rather, Williams simply reiterates the actions of each individual Defendant and legally concludes that such persons conspired with one another. *See* Compl. § 91. Because Williams does not allege facts towards a meeting of the minds, he fails to assert a prima facie conspiracy action. *See Chruby*, 534 F. App'x at 160 (granting motion to dismiss conspiracy claim for failure to allege facts with requisite specificity).

Defendants' Motion to Dismiss is granted and Count V is dismissed without prejudice.

## V. CONCLUSION

Count I, asserting First Amendment retaliation, is dismissed without prejudice because, *inter alia*, Williams acted in his official capacity when speaking and associating with the subordinate officer. The due process claim in Count II is dismissed without prejudice, as Williams fails to sufficiently allege that he had a protected property interest. The *Monell* claim in this regard is also dismissed without prejudice because the allegations are so insufficient that this Court cannot determine whether leave to amend would be futile. Next, because Williams did not step outside of his titled role in granting USERRA leave to the subordinate officer, Williams is not protected under USERRA and this claim is dismissed without leave to amend. Finally, Williams fails to allege facts with requisite specificity to state a conspiracy claim under 42 U.S.C. § 1985, and this count is dismissed without prejudice.

A separate order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge