IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILL WILLIAMS | : CIVIL ACTION |
| | : |
| -vs- | : |
| | :  No.5:17-cv-04910 |
| CITY OF ALLENTOWN, KEITH MORRIS, | : |
| ED PAWLOWSKI, GLEN DORNEY, GAIL STRUSS, | : JURY TRIAL DEMAND |
| FIVE JOHN & FIVE JANE DOES | |

FIRST AMENDED COMPLAINT

I.     INTRODUCTION

1.      This civil action is initiated for the deprivation of federal rights under color of state law.

2.      Plaintiff brings this civil action pursuant to 42 USC 1983, et seq. and includes a 42 USC 1985 claim for conspiracy to deprive rights.

3.      Relief is sought under law and equity to make the plaintiff whole, for, and from the deprivation of the federal rights, which rights are secured under the First and Fourteenth amendments of the United States' Constitution, law, rule, and/or regulation.

4.      Plaintiff believes, thus contends, and avers, the deprivation is intentional, reckless, and/or maliciously done in the deliberate indifference of or reckless disregard for the plaintiff's rights.

5.      Further, under the Single Act Theory there existed municipal liability for a policy practice or custom to retaliate against a person for political affiliation or association and/or compliance with or aid to another under the law, such as the USERRA (38 U.S.C. §§ 4301-4335).

1

6.      The law prohibiting the defendants' conduct, as more fully described below, was clearly established at and before the time the Defendants deprived the Plaintiff of federal rights.

7.      The Defendants acted for independent and joint personal retaliatory reason, under color of state law, as a person as the term is intended by law and under 42 USC 1983 et seq.

8.      The defendants acted against the Plaintiff collectively and separately, intentionally, and when the Defendants knew or should have known they would deprive the plaintiff of clearly established protected constitutional rights, or when they knew or should have known their conduct likely would deprive plaintiff of the clearly established protected rights and/or cause economic damages and injury to the plaintiff.

9.      As plaintiff more fully set forth in detail below, for all times related to the Plaintiff's causes of action in this complaint, the Defendants met or spoke with one another and by words and deeds acted for a common purpose, which is to deny the plaintiff of federal rights, to property or income and benefits attendant to employment, and for the plaintiff's political affiliations and association with another.

10.     The defendants took steps in furtherance of the agreement to achieve a common goal to deprive rights, the property, such as wages or income of the plaintiff, without valid or meaningful due process of law, and for his political affiliation or association.

11.     The defendants in the course of the agreement to accomplish the common goal acted through legal means available by their positions with the City of Allentown, which means were to achieve an illegal purpose, or the defendants acted through illegal means for a legal reason.

12.     The Defendants acted for themselves or collectively for each other; they acted independently of and jointly with one another, for a personal or group goal.

13.     The defendants acted under color of state law, and did so, by virtue of their government employment with the City of Allentown as employees of a governmental entity, and with authority conferred upon them by law.

II.     JURISDICTION / VENUE

14.     The Court obtains jurisdiction under 42 U.S.C. §1983 et seq., the Civil Rights Act of 1964 and its amendments, and under 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (3) and (4) (Civil Rights).

15.     The actions of the defendants that plaintiff relies on to state claims, and for them to accrue, occurred within Allentown, Pennsylvania, which place is within the venue of this Court, so the venue for the action is properly within the Eastern District Court of Pennsylvania.

III.     PARTIES

16.     Bill Williams (Plaintiff hereafter) is a natural person, an individual; he is over the age of eighteen and resides in the Allentown City area, Lehigh County, Commonwealth of Pennsylvania.

17.     The City of Allentown ("The City") is a defendant; it is an incorporated municipal governmental entity, a City of the Third Class, and a political subdivision of the Commonwealth of Pennsylvania, Lehigh County.

18.     The City and remaining defendants act through Commonwealth law and the City's Charter and/or ordinances, rules, and regulations. The City acts through elected officials, office holders, employees, agents, and representatives of the City. The City and its employees, which include the individual defendants, acting from the authority granted to them by the Acts,

3

Policies, Rules, Ordinances, and Laws created by the General Assembly of the Commonwealth of Pennsylvania, Congress of the United States, and the City of Allentown Council.

19.       Keith Morris is a defendant. He is a natural person over the age of eighteen. For all time material for the actions the plaintiff attributes to him, Morris is an employee of Allentown City, the chief policy-maker and/or final decision-maker for the City of Allentown Police Department. He is believed to reside in the Allentown area, Lehigh County, in the Commonwealth of Pennsylvania.

20.       Ed Pawlowski is a defendant. He is a natural person, and for all time material for the actions plaintiff attributes to him, he is an employee of Allentown City, the Mayor and a chief policy-maker for the City of Allentown; he is a final decision maker for the City of Allentown Police Department. He resides in Allentown City, Lehigh County, in the Commonwealth of Pennsylvania.

21.       Glen Dorney is a defendant. He is a natural person over the age of eighteen. For all time material to the actions that plaintiff attributes to him, he is an employee of Allentown City,  a chief policy-maker and/or final decision-maker for the City of Allentown 's Police Department; he is believed to reside in the Allentown area, Lehigh County, in the Commonwealth of Pennsylvania.

22.       Gail Struss is a defendant. She is a natural person over the age of eighteen. For all time material to the actions that the plaintiff attributes to her, she is an employee of Allentown City And its police department. She is a chief policy-maker and/or final decision-maker for the City of Allentown's Police Department; she is believed to reside in the Allentown area, Lehigh County, in the Commonwealth of Pennsylvania.

23.     The Five John and Jane Does are not known specifically by the Plaintiff. However, Plaintiff believes the Does are officials, agents, employees, or representatives of the City of Allentown, that they are natural persons, and the plaintiff believes the Does reside in Allentown City area, Lehigh County, in the Commonwealth of Pennsylvania.

IV.    RELEVANT FACTS

24.     Plaintiff incorporates all preceding paragraphs here and as if each were repeated verbatim.

25.     In or about April 2006, Plaintiff commenced employment with the City of Allentown as a police officer; he worked for the Police Department.

26.     Within the City of Allentown Police Department, is the Youth Division, a specialized position that has about 15 officers/detectives assigned thereto.

27.     The City of Allentown uses a civil service system to select ranks thus positions within some Departments but for its Police Department.

28.     The plaintiff over time advanced in pay and grade, viz. to detective and sergeant, and through the Allentown City Civil Service system.

29.     In or about February 2014, the plaintiff advanced to the Youth Division.

30.     In or about May 2016, plaintiff advanced in rank and was promoted through civil service to the rank and position as the sole Detective Sergeant within the Youth Division; plaintiff was assigned to the command and a complement of officers and detectives within the division.

31.     The Sergeant of the Youth Division is a unique specialty position within the City of Allentown's police department. There is no equal or parallel in benefits, duties, and responsibilities of the Youth Division Detective Sergeant position to the Patrol Division.

32.     The Youth Division is under the command of the Criminal Investigation Division, the Police Chief and Deputy Chiefs, and the Mayor.

33.     The plaintiff is an Allentown City civil service employee.

34.     The City of Allentown's Civil Service regulations prohibits the reduction in employment, wages or grade without good cause existing and valid procedural due process first provided to the civil service employee.

35.     The plaintiff is a civil service employee and member of a collective bargaining unit, known as the FOP.

36.     There is an employment contract that exists between the FOP, and the City of Allentown and the contract covers the plaintiff and his employment with Allentown City and its police department.

37.     The employment contract, aforementioned, prohibits the reduction in employment, wages, or grade without good cause existing and valid procedural due process first provided to the union member or covered employee of the contract.

38.     The plaintiff is a covered union member under the FOP/ Allentown City employment contract.

39.     A Youth Division sergeant position provides the employee with duties of which none require he speak with an employee about politics, run for office, provide advice on the USERRA law or city ordinances related to political activities by employees. Further, not a duty is to provide, approve or direct an employee where to obtain consent or advice on political activity, or political party affiliate. The Youth Division position also did not have as a duty an employee may not or may provide aid to another person to run for political office, join, represent or affiliated with a particular political party, which the plaintiff did all.

40.     A Youth Division sergeant position comes with duties, which duties include the compulsory obedience to federal, state, and city laws, and the Allentown City policies. However, there is no duty to of Youth Division Sergeant to make the decisions whether or not to give or grant military leave to another employee under the Uniformed Services Employment and Reemployment Rights Act of 1994 (commonly referred to as USERRA).

41.     Plaintiff's Sergeant of the Youth Division duties does not include making a final decision on policy.

42.     It was neither a part of the plaintiff's duties, nor did the plaintiff have authority to grant or deny military leave to another, or to give advice and/or allow an employee to run for political office.

43.     A noneconomic and economic benefit to the Youth Division Sergeant position included prestige, which increased the plaintiff's employment opportunities and earning power.

44.     The Youth Division Sergeant position has no equal or parallel, for benefits and career opportunities, in the Patrol Division.

45.     One economic benefit from the specific Youth Division sergeant rank and position afforded the plaintiff career opportunities that included high earnings and earning powers during and post- Allentown PD employment. Moreover, the high earning power opportunity remained post-employment with the City of Allentown Police Department.

46.     Another noneconomic and economic benefit to the Youth Division Sergeant position is specific to the plaintiff; he was tasked with new and unprecedented responsibilities from the defendants, such as 1) plan and implement a town hall-style forum for the City's youth, 2) establish and maintain staffing for crossing guards, 3) develop mentoring programs in the schools including Big Brothers and Big Sisters, 4) implement additional referral sources other

7

than the courts for troubled youth, 5) develop and implement a merit-based matrix system for the selection of new officers to the Youth Division, and 5) pioneer and develop a new polygraph process for police applicants.  This list is not all-inclusive.

47.     The plaintiff accomplished all tasks assigned as Youth Division Sergeant in an exemplary manner.

48.     Another economic benefit to the Youth Division Sergeant position, for the plaintiff during the employment, is increased income and earnings through overtime, and an ability to have the more disposable income to save other uses. Such as but not limited to, family activities, bills, and education for children, spouse, and self.

49.     A non-economic benefit to the Youth division Sergeant position is steady day-work schedule with every weekend and holiday off, and to spend more time for association with the family, friends, spouse, children and engage in community and social activities.

50.     On or about January 2017 the plaintiff was approached by another employee of the Youth Division, Allentown City's police department. The employee was considering to campaign and run for Mayor. The employee came to the plaintiff off duty, as a citizen, and when, both were not working. The employee asked the plaintiff for aid, to provide an opinion regarding any potential conflicts with employment by running for political office.

51.      As it was not a part of the plaintiff's duties, or the plaintiff's authority, to give advice and/or allow an employee to run for political office, the plaintiff merely provided his personal opinion only to the coworker off duty.

52.     The coworker spoke with the plaintiff on a political matter, viz running for political office and specifically the conduct of the current Allentown City Mayor, which the employee believed he could improve. The coworker spoke he would run against the Mayor under

an opposing political party, which he was affiliated and was not the current Mayor's political party.

53.     The coworker came to the plaintiff as a citizen. The plaintiff spoke with the co-worker employee as a citizen. Each spoke while off duty, and neither spoke as a duty of their employment with Allentown City and its police department.

54.     The coworker spoke with the plaintiff for his opinion as a citizen only, and to speak on public matters, or to affiliate with the employee's political party.

55.     Plaintiff affiliated with the co-employee and his political views and party. The plaintiff saw no basis why the co-employee could not run as a candidate for Mayor, against defendant Ed Pawloski, or speak on matters to the public in how improvement might be had in running City business.

56.     Over a month later, before March 2017, the co-employee spoke with the Plaintiff again, off duty and when both were acting as a citizen. The co-worker explained he was close to a decision about running for Mayor and going public. The Plaintiff suggested the coworker speak with the Chief of Police for the City of Allentown. Viz, defendant Morris about running for the Mayor's Office.

57.     From about mid-February and prior to March 1, 2017, the coworker met with and had several discussions with defendant Morris.  The co-worker told Morris of the plaintiff's affiliation and aid.  Defendant Morris never gave an order prohibiting the coworker to run for office or said there was any prohibit or conflict with departmental policy, so defendant Morris said he had "no official position" on it. However, Morris used language that made the coworker feel threatened and there would reprisal or retaliation if the worker ran for the Mayor's Office.

9

58.     On February 23, 2017, the coworker gave a political speech, where he announced his candidacy for Mayor. The speech was televised in the Allentown area. The speech covered political issues and matters of public concern or interest.

59.     Immediately following the co-worker's speech but before March 1, 2017, the coworker was granted USERRA leave to travel and report for active military duty.

60.     The coworker candidate following the political speech reported for active military duty.

61.     On the morning of or about February 24, 2017, plaintiff received an order from Captain Lake, who is the plaintiff's immediate supervisor. The plaintiff was ordered to provide documentation of the coworker's military orders. The plaintiff complied with the order and provided the paperwork.

62.     On or about March 2, 2017, the plaintiff was ordered by Captain Lake to appear before the chief of police, who is defendant Morris. The Plaintiff was not told a reason to appear, and the plaintiff was not free to travel on his own but escorted to Chief Morris' office by Lake.

63.     In Chief Morris' office, when plaintiff arrived, were defendants Assistant Chief Glen Dorney and Assistant Chief Gail Struss.

64.     Chief Morris told plaintiff "today is your last day in Youth Division. You will report to patrol and to Lt. Hill for the night shift on 8 March."

65.     Chief Morris, Assistant Chief Glen Dorney, and Assistant Chief Gail Struss had a recent meeting regarding this decision before summoning the Plaintiff.  The defendants spoke together and acted in concert with each other as the final decision makers for the police department.

66.     Plaintiff was removed from his Youth Division position and placed in patrol. The move caused the plaintiff to lose the unique benefits, prestige, responsibilities, and career opportunities that only exist in that position as the sergeant of Youth Division. Such benefits include but are not limited to weekends off and non- work time between 11 PM to 7 AM. Plaintiff lost the use of a City-owned car with gas and maintenance benefits, for the use of the car between home and work.  Plaintiff also lost the opportunities for the unique duties and responsibilities that were new and unprecedented, but that he accomplished and that provided additional economic and noneconomic benefits.

67.     In patrol, the plaintiff worked permanent midnights, and all or most holidays and weekends.

68.     Before March 8th, 2017, plaintiff sent correspondence to defendant Morris requesting the transfer be made to a vacant day/middle shift patrol rotation versus steady night shift.  Additionally, plaintiff requested the transfer be made to a vacant sergeant's position at the police academy versus steady night shift.  Despite both being vacant, Morris denied both without explanation.

69.     On March 8, 2017, when plaintiff reported for patrol, midnight shift, plaintiff received notification that an internal disciplinary investigation had been initiated against him for the USERRA leave used by another worker; the co-worker that became was a candidate for the Mayor of Allentown office, whom the plaintiff affiliated with and who told defendant Moriss, who initiated the investigation, that the plaintiff affiliated and aided the co-worker to run for political office. The initiation of the internal investigation violated departmental policy.

70.     Plaintiff through the collective bargaining agreement filed a grievance for the position change.

71.    The City of Allentown through its Human Resources opposed Plaintiff's grievance.

72.    Defendant Morris, defendant Dorney, and defendant Struss said the plaintiff was transferred for three minor deficiencies. During the grievance step process, with supporting documentation, the Plaintiff proved untrue or suspect the disciplinary allegations. For example, of the three cited deficiencies, alleging the plaintiff acted by his decision, the defendants knew the plaintiff acted under the orders of a superior officer and made no decision to perform on his own.

73.    Furthermore, Plaintiff expressed to the defendants that they were retaliating for protected activity under the law, such as affiliation and to association with a coworker that was running for mayor and challenging Mayor Pawlowski in the election, and the political party of the coworker. No defendant denied the plaintiff accusation. Plaintiff then stated he was going to file suit in federal court for such.

74.    Plaintiff expressed too that the defendants had violated the Collective Bargaining Agreement by removing the plaintiff from his position as Sergeant at Youth Division.

75.    Plaintiff offered to resolve the matter without a suit or arbitration. The plaintiff met to discuss the matter with the new police chief, defendant Glen Dorney. The plaintiff also met with the Allentown City's Director of Human Resources; the meetings and discussions occurred in or about July, August, and September 2017.

76.    Between those dates on or about July, August, and September 2017, the Director of Human Resources and defendant Glen Dorney spoke with one another, and they at several meetings with defendant Pawlowski and the City Solicitor spoke regarding the Plaintiff's intent

12

to sue, claim of retaliation for constitutionally protected activities, and what action would be taken by them on the accusation.

77.     In furtherance of the defendants' discussion with one another, as referenced in the preceding paragraph, they held meetings with themselves, later with the Plaintiff. Defendant Pawlowski, aware of the plaintiff's claim of retaliation, spoke with the plaintiff. He spoke with other defendants and the plaintiff under the authority as the Mayor and as a final decision-maker for the City of Allentown; he spoke too for himself and the other defendants.

78.     On or about mid-September 2017, the City through Pawlowski made an offer to the plaintiff. The plaintiff and all defendants met and discussed terms to end and prevent a lawsuit and arbitration.  The terms discussed involved creating a new position in the Youth Division.  However, Chief Dorney said the position might only last until January 2018. No other defendants disputed Dorney.  Plaintiff questioned the reliability, accuracy, and/or truthfulness of Dorey's representation' still, the City Solicitor and Pawlowski did not dispute Dorney's representation.

79.     The arbitration on plaintiff's grievance was not scheduled, However, after the time when the arbitration was to be scheduled, the City of Allentown and defendant Pawlowski instructed the new police chief Dorney and Human Resources Director to withdraw its offer to the plaintiff and stop discussions with the plaintiff; this lawsuit followed.

V.     CAUSES OF ACTION

COUNT I
FIRST AMENDMENT – RETALIATION
Political Affiliation / Association/ Speech Right
42 USC 1983, et seq.

80.     Plaintiff incorporates all preceding paragraph here and as if each were repeated verbatim.

81.     The plaintiff agreed with the coworker's political views.

82.     The plaintiff works for Allentown city, which is a public employee that does not require for employment that one affiliated with a particular political party.

83.     The plaintiff maintained a political affiliation.

84.     The Plaintiff's political affiliation was a substantial or motivating factor in the adverse employment action, viz removal from Youth Davison, placement in patrol, loss of a car, gas and maintenance money, loss of further economic and noneconomic opportunities, generating a retaliatory and fraudulent internal affairs investigation, and freedom. Viz, Not free to leave, loss of liberty, and escorted to the Chief's office after complying with the order to provide USSERA paperwork, and as if in police custody and.  ????( what should be here?)

85.     Plaintiff is a member of a first amendment protected class; in that, the plaintiff spoke as a citizen to the defendants on a matter of public concern, such as illegal retaliation for First Amendment activity or USERRA activity by a member of the armed services. The plaintiff too is a member of a class that affiliates with a person that associates and affiliates with a political party, one the defendants do not affricate with, particularly defendant Ed Pawlowski.

86.     The plaintiff's affiliation is on political matters he held or matters of public concern.

87.     The coworker with whom the plaintiff associated, and his political party, is an employee of Allentown City and its Police Department. The plaintiff like the coworker is supervised by defendant Pawlowski, defendant Morris, defendant Assistant Chief Glen Dorney, and Assistant Chief Gail Struss.

88.     Defendant Morris is a friend of defendant Pawlowski.

14

89.     At the time of the plaintiff's speech, association and political affiliation, defendant Morris was seeking advancement in employment and pay increase from the City of Allentown as its police chief, from defendant Pawlowski.

90.     Defendant Morris supported defendant Pawlowski's mayoral re-election effort.

91.     Defendant Morris, using his position and the authority as Allentown City police chief, caused the plaintiff to be transferred from Youth division to the patrol division resulting in a complete change in the indicia of the plaintiff's rank and without meaningful or valid procedural due process of law because of or motivated by the plaintiff's political affiliation.

92.     Defendant Morris' actions transferred the plaintiff between two separate divisions. The plaintiff's position, duties, and responsibilities, as the Sergeant of the Youth Division within the Criminal Investigation Division, bear only one common thread with the duties and responsibilities of a Sergeant of a platoon in the patrol division—each is a supervisor. Outside of that, there is no basis for comparison because it was not a lateral transfer and each division is different in their job descriptions as well as their duties and responsibilities.

93.     As a Sergeant of the Youth Division, the plaintiff, had the economic benefits of higher earning potential specifically because of the greater level of responsibilities placed upon him in both numbers of personnel supervised—plaintiff was the only sergeant in Youth for sixteen personnel versus being a one to five ratio among patrol sergeants—and the unique duties and responsibilities listed earlier that were placed upon the plaintiff as well as the continued ability to assist or work investigative cases absent in patrol.

94.     The defendants inflicted further financial loss upon the plaintiff in the specific benefit of a take-home car with gas and maintenance provided by the city. As a Sergeant of the Youth Division, the plaintiff was on call every day of the year. There is no patrol sergeant that

has this responsibility.  This is one of several reasons why the Sergeant of the Youth Division receives a take-home car with gas and fuel benefits as a specific benefit to the position while patrol sergeants do not.

95.     Another loss to the plaintiff was the complete removal from the new and unprecedented responsibilities specific to the plaintiff that provided noneconomic and economic benefits such as (not all inclusive): 1) plan and implement a town hall-style forum for the City's youth, 2) establish and maintain staffing for crossing guards, 3) develop mentoring programs in the schools including Big Brothers and Big Sisters, 4) implement additional referral sources other than the courts for troubled youth, 5) develop and implement a merit-based matrix system for the selection of new officers to the Youth Division, and 5) pioneer and develop a new polygraph process for police applicants.

96.     The plaintiff sustained a further loss in defamation.  In the last twenty years, no one was ever removed from a specialty position and transferred back to patrol unless it was for retaliation, punishment, discipline or a combination thereof.  Furthermore, a transfer to night shift was a standard punitive practice.

97.     In fact, to remove such a stigma, the administration created and implemented a mandatory one-year night shift rotation by seniority in 2010 if there were a lack of volunteers. The plaintiff did his rotation in 2010.  Therefore, plaintiff's transfer created and disseminated a false and defamatory impression that he did something wrong, defamation with greater than normal emphasis because it also affected his command as a supervisor.

98.     Furthermore, defendant Morris initiated an internal disciplinary investigation immediately, in about one day, after the coworker's public broadcasted on political television speech.

16

99.    Defendant Morris caused an internal disciplinary investigation to commence against the plaintiff because of the plaintiff's political affiliation. The investigation violated department regulations.

100.    The basis for defendant Morris' internal investigation is pretextual for the plaintiff's political affiliation and association, viz the reason stated for the investigation was why the plaintiff's coworker was using USERRA military leave despite defendant Morris already having documentation to show the coworker's military duty.  Per departmental policy, any other query should have been sent through the chain of command and not by an internal disciplinary investigation.

101.    Plaintiff cooperated in the internal inquiry and told defendant Morris that under the clearly established USERRA law and the past practice of the City is for USERRA employees seeking leave are granted the leave, regardless of political activity or affiliation. Moreover, the leave was granted by another with the City than the plaintiff; the leave too included the City's custom for travel time to report for active military service, which the plaintiff did not give but another within the city did.

102.    Defendant Morris nonetheless removed plaintiff from the Youth Division position and issued discipline against the plaintiff for USERRA leave the co-worker utilized.

103.    Plaintiff has held the specialized position in Youth Division, as its sergeant, nearly a year without a single circumstance of counseling, discipline, or a citizen complaint. Indeed, plaintiff's performance is ranked as outstanding as demonstrated by the defendants' increasing the plaintiff's duties and responsibilities.

104.    Further, Captain Lake, the plaintiff's immediate supervisor stated he knew nothing of a deficiency in the plaintiff's work. Which statement Lake made a half hour before

the plaintiff was to be escorted to Chief Morris's office that there was an allegation plaintiff had work deficiencies.

105.     In fact, in a meeting two weeks before the plaintiff is removed from the Youth Division, defendant Morris advised the plaintiff he was doing a good job, and the plaintiff can prove with documentation that he was not deficient in work.  Defendant Morris even said he was a "credit to the department."

106.     Defendant Morris, Dorney, Struss, Pawlowski, and City of Allentown's reason to remove plaintiff, for deficient work, and to discipline for leave granted by the City to a USERRA covered employee is pretextual for illegal retaliation against plaintiff for activity protected by law.

107.     But for and a motivating reason, viz the plaintiff's association with the mayoral candidate and political affiliation, defendants would not have removed the plaintiff from the Youth Division and defendant Pawlowski would not have concurred with the transfer of the plaintiff to patrol, and in ending the benefits attended to the Youth Division assignment, or investigated the plaintiff.

108.     The Plaintiff's speech to the defendants was done as a citizen and on a matter of public concern. Viz, retaliation against public employees for political affiliation and activity. The speech was not limited to the removal from Youth Division but the motivation of it as retaliation for protected activity.

109.     As a direct result of, and but for, the plaintiff first amendment protected activity the plaintiff was subjected to material adverse conduct that included employment action. Such as, but not limited to, removal from a specialized position and duties. A change in the terms and conditions of employment, pay, and prestige in the police department and the City of Allentown.

110.     Since the URESSA leave was not by the plaintiff, and all acts related to the reason for discipline was done under order of superiors, "BUT FOR" or a substantial motivation reason of the defendants discharge of the plaintiff as Youth Division Sergeant, is the plaintiff's political affiliation with a co-worker that was seeking political office and the speech, therefrom.

111.     The Plaintiff sustained economic damages in excess of $10,000 a year,  by the defendants' acts, and the plaintiff suffered great emotional distress and anguish, humiliation, embarrassment, defamation, and loss of enjoyment in society or life.

COUNT II
DUE PROCESS

112.     Plaintiff incorporates all preceding paragraph here and as if each were repeated verbatim.

113.     Plaintiff by contract and/or law, including but not limited to civil service rule or regulation, cannot and could not be removed from his Youth Division position without proper due process of law.

114.     The Plaintiff has a property right in the Youth Division Sergeant position and the benefits attendant to the position.

115.     Under the law, the plaintiff has a recognized property interest in the wages and benefits obtained from the Youth Division position.

116.     The plaintiff by the transfer to patrol and removal of duties as Youth Division Sergeant is actually or constructively discharged by the job title change, reduction in duties, and privileges from the title. Viz, but not limited to loss of a car, gas and maintenance, weekends and holidays off, and no midnight tours.

19

117.    The Plaintiff before the constructive discharge was not afforded pre-discharge valid due process of law, and by fraud acts that devised the plaintiff was deprived of post-deprivation due process of law.

118.    Under the United States, Supreme Court decision, Loudermill, the plaintiff must receive pre-deprivation due process before discharge or removed from his the Youth Division Sergeant position, or by a title, age, benefit or grade changed.

119.    Under Lowdermill the plaintiff is to be afforded minimal process to know of potential discipline, the factual basis for it, and speak to avoid an erroneous deprivation. Such due process was not provided to the plaintiff before the discharge or constructive discharge.

120.    Defendants Morris, Dorney, Struss, Pawlowski and the City of Allentown changed plaintiff's position, changed his grade, and reduced wages and benefits.

121.    Defendants Morris, Dorney, Struss, Pawlowski, and the City of Allentown did not provide Plaintiff with Loudermill pre-discipline due processes, such as meaningful notice and opportunity to speak before the change of position and/or wage reduction occurred.

122.    Plaintiff asked to speak before the change, thus speak before an erroneous loss of benefits, wage, and prestige. However, Defendant Morris said, "no the decision is made."

123.    As a direct result of the defendants' conduct, the plaintiff was deprived of a federal right and suffered economic damages and compensatory personal injury from material adverse conduct that includes material adverse employment action. Such as, but not limited to, removing plaintiff from a specialized position and duties, a change in the terms and conditions of plaintiff's employment and pay, and the loss of prestige in plaintiff's employment with the police department and City of Allentown.; Plaintiff also suffered economic damages in excess of

$10,000 a year and other damages. Such as, but not limited to, emotional distress and anguish, humiliation, embarrassment, and loss of enjoyment in society and life.

COUNT III
Monell Municipality Liability
42  SC 1983 et seq.

124.    Plaintiff incorporates all preceding paragraph here and as if each were repeated verbatim.

125.    The plaintiff believes thus avers Defendant Morris, Pawlowski, and the City of Allentown are liable under the Single Act Theory for municipal liability and as final decision-makers that decided to actual or constructive discharge the plaintiff from Youth Division Sergeant, which removed benefits or property from the plaintiff.

126.    Each defendant acquiesced, affirmed, ratified, and sanctioned the other's decisions and acts. Such as those by Morris, Pawlowski, Struss, and Dorney, to change the plaintiff's job title and remove the benefits attendant to the Youth Division position; to assign the plaintiff to Patrol, without valid or meaningful pre-loss procedural due process of law and because of protected activity, such as political affiliation. By such, the City acted from an official policy or custom to deprive the plaintiff of federal rights.

127.    Pawlowski as the Mayor for Allentown, under a power scheme of or used by the City of Allentown, has final decision-making authority over the police department and its employees, of which one is the plaintiff.

128.    As a direct result of the defendants' conduct of Morris, Pawlowski, Dorney, and Struss, the plaintiff is deprived of a federal right and suffered economic damages and compensatory personal injury from material adverse conduct that includes material adverse employment action. Such as, but not limited to, removing plaintiff from a specialized position

and duties, a change in the terms and conditions of plaintiff's employment and pay, and the loss

of prestige in plaintiff's employment with the police department and City of Allentown.

129.     Plaintiff suffered economic damages more than $10,000 a year and other

damages, such as, but not limited to, emotional distress and anguish, humiliation,

embarrassment, and loss of enjoyment in society, from the policy, practice or custom.

COUNT III
USERRA - RETALIATION

130.     This claim is dismissed by the Court "with prejudice." The Plaintiff preserves for

appeal review the claim and its dismissal.

COUNT IV
CONSPIRACY TO DEPRIVE RIGHTS
42 USC 1985, et seq.

131.     Plaintiff holds a property interest in his position with the City of Allentown Police

Department.

132.     Defendant Morris with Pawlowski and others named and not named as parties in

this action, such as the Allentown assistant solicitor, Glen Dorney, and Gail Struss, are two or

more persons. They came to a meeting of the minds through words and deeds as described above

on or about February and to September 2017.

133.     They agreed that one or all would retaliate against the plaintiff and deprive the

plaintiff of federal rights. Such as, but not limited to, plaintiff's first amendment association, free

speech right and political affiliation, and fourteenth amendment procedural due process right.[i]

134.     In furtherance of the conspiracy, defendant Morris directed for the plaintiff to be

escorted to his office, deprived of his free movements, and then denied plaintiff of Loudermill

due process. Morris then initiated an internal investigation that ended with unwarranted

discipline against the plaintiff and removal as sergeant of Youth Division, then transfer to patrol

and midnight shift. Plaintiff lost the use of the City car to drive from home to work and vice versa, and City gas and maintenance for the car, and well as other economic and noneconomic benefits already specified herein.

135.     In furtherance of the conspiracy, defendant Pawlowski used his position as Mayor to support Morris' action. Pawlowski condoned and acquiesced to Morris' conduct, and Pawlowski ratified Morris' conduct. Pawlowski did not stop Morris but further it by revoking an offer made to the plaintiff to resolve the deprivation and/or collective bargaining grievance to be heard through arbitration.

136.     In furtherance of the conspiracy, Glen Dorney and Gail Struss used their position as Assistant Chiefs of the Allentown City police department to supported defendant Morris; they did not speak out or stop Morris.

137.     The Does and Assistant Allentown City Solicitor in furtherance of the conspiracy provide knowingly inaccurate, untrue and misrepresentation about City ordnance controlling City car use, to induce the plaintiff to end the CBA grievance and stop arbitration. They further did so to induce the plaintiff to not initiate a federal lawsuit for the defendants' deprivation of plaintiff's federal rights.

138.     As a direct result of the conspiracy, the plaintiff suffered economic damages and compensatory personal injury from material adverse conduct that includes material adverse employment action. Such as, but not limited to, removing plaintiff from a specialized position and duties, a change in the terms and conditions of plaintiff's employment and pay, and the loss of prestige in plaintiff's employment with the police department and City of Allentown.; Plaintiff also suffered economic damages in excess of $10,000 a year and other damages. Such as, but not

limited to, emotional distress and anguish, humiliation, embarrassment, and loss of enjoyment in society.

PRAY FOR RELIEF

WHEREFORE, Plaintiff prays the Court enter judgment for him and against the Defendants, and to hold the Defendants joint and several liable. To award the Plaintiff all relief that makes him whole and all relief provided by law and equity. Such as, but not limited to, (a) compensatory, consequential, and punitive damages, (b) front and back pay, (c) negative tax consequence relief, (d) reinstatement, (e) reasonable attorney fees, (f) litigation costs, and all other relief allowed by law or in equity that is just and proper to make plaintiff whole.

Respectfully submitted,

/s/

Brian M Puricelli, Esquire
Attorney for the Plaintiff

LAW OFFICE OF BRIAN M PURICELLI
2721 Pickertown Road
Warrington, PA 18976
215 504-8115
puricellib@puricellilaw.com

---

[i] The Court dismissed with prejudice the USERRA claim. For the purpose to preserve for appellate review the USERRA claim and issue, the plaintiff assets he is covered by or under the USERRA anti-retaliation provisions and for any activity covered by USERRA that an armed service member would be entitled. The plaintiff asserts he is a protected person under USERRA.

CERTIFICATE OF SERVICE


It is hereby certified that a true and correct copy of the First Amended Complaint this

22nd day of August 2018, is mailed thus served on the Clerk of Court, for filing in the electronic

filing system and once done is available for viewing and downloading on the ECF System.

Served with the document by ECF is:


Steven E Hoffman, Esq.
Counsel for the defendants



ECF SIGNATURE     BMP3198     /s/
Brian M. Puricelli
Attorneys for Plaintiff


Law Offices of Brian Puricelli
2721 Pickertown Rd
Warrington PA 18976
 (215) 504-8115
puricellib@gmail.com