## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BILL WILLIAMS,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 17-4910** |
| | : | |
| **CITY OF ALLENTOWN;** | : | |
| **KEITH MORRIS; ED PAWLOWSKI;** | : | |
| **GLEN DORNEY; GAIL STRUSS; and** | : | |
| **FIVE JOHN & FIVE JANE DOES** | : | |
| *Defendants.* | : | |

## MEMORANDUM

Plaintiff, a police officer, has alleged claims against Defendants—a Mayor, a

Chief of Police, and other police officers—for retaliation in violation of the First

Amendment's protection of the freedom of speech and association, violation of

pre-deprivation due process, conspiracy under § 1985(3), as well as liability for the

City of Allentown under *Monell*. In addition to arguing that Plaintiff has failed to

state facts sufficient to substantiate any of these four claims, Defendants argue that

they are entitled to qualified immunity, which they claim would require dismissal

of all claims regardless of whether Plaintiff had stated a claim for relief. Defs.'

Mot. Dismiss at 24-25. Defendants contend that the law of qualified immunity

permits vindictive retaliation by government officials in their supervisory role over

a public employee as long as the retaliation is not a clear violation of Plaintiff's

1

constitutional or statutory rights, of which a reasonable person would have known at the time of the retaliation. *Id.*

## I. **INTRODUCTION**

Plaintiff Bill Williams, a police officer with the City of Allentown, initiated this civil rights action against the City of Allentown and several of its employees after he was reassigned from his position in the Youth Division to a position in patrol allegedly for discussing with another officer in the Youth Division whether the employee could run for political office and how the employee could improve upon the then-current Mayor's performance in running the City of Allentown. *See generally* Amended Complaint (ECF No. 16). Defendants initially moved to dismiss the Complaint for failure to state a claim on December 13, 2017 (ECF No. 6), which the Honorable Joseph F. Leeson granted (ECF No. 15), dismissing four counts without prejudice[1] and one count with prejudice.[2] This case was reassigned from the Honorable Joseph F. Leeson to the Honorable Chad F. Kenney on November 26, 2018. (ECF No. 22). On August 23, 2018, Plaintiff filed an Amended Complaint. (ECF No. 16). Before the Court now is Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim (ECF No. 17),

---

[1] Count I: Retaliation for speech or political association in violation of the First Amendment; Count II: Pre-deprivation due process; Count III: *Monell* Municipal Liability; Count V (incorrectly labeled Count IV): Conspiracy to Deprive Rights under 42 U.S.C. § 1985.
[2] Count IV (incorrectly labeled Count III): Retaliation in violation of USERRA.

2

Plaintiff's Response (ECF No. 20), and Defendants' Reply (ECF No. 21). For the reasons that follow, the Court grants in part and denies in part Defendants' Motion to Dismiss the Complaint.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 550 U.S. at 679).

3

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 550 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 550 U.S. at 679). Third, '"[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 550 U.S. at 679).

## III. BACKGROUND

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against the City of Allentown; Keith Morris ("Morris"), then-Chief of Police of Allentown; Ed Pawlowski ("Pawlowski" or "then-Mayor"), then-Mayor of Allentown; Glen Dorney ("Dorney") and Gail Struss ("Struss"), Assistant Chiefs of Police for the City of Allentown Police Department; and ten unnamed individuals who are "officials, agents, employees, or representatives of the City of Allentown." Am. Compl. at ¶¶ 17-23. Plaintiff began working for the City of Allentown Police Department in April 2006 as a police officer and, over time, was promoted to a detective and ultimately sergeant. Am. Compl. at ¶¶ 25-28. Plaintiff began working in the Youth Division in February 2014. *Id.* at ¶ 29. In

4

May 2016, Plaintiff was promoted within the Youth Division to be the sole Detective Sergeant and was "assigned to the command and a complement of officers and detectives within the division." Am. Compl. at ¶ 30. Plaintiff alleges that the Sergeant of the Youth Division is a unique specialty position within the City of Allentown's Police Department, which has "no equal or parallel in benefits, duties, and responsibilities." *Id.* at ¶ 31. The Youth Division is under the command of the Criminal Investigation Division, the Police Chief and Deputy Chiefs, and the Mayor. *Id.* at ¶ 32. Plaintiff alleges that the Youth Division Sergeant position included duties such as "compulsory obedience to federal, state, and city laws," along with "Allentown City polices." *Id.* at ¶ 40. Plaintiff alleges that as Youth Division Sergeant, his duties did *not* include, "speak[ing] with an employee about politics, run[ning] for office, provid[ing] advice on . . . city ordinances related to political activities by employees," nor "provid[ing], approv[ing] or direct[ing] an employee where to obtain consent or advice on political activity, or political party affiliate," nor "provid[ing] aid to another person to run for political office, join, represent or affiliated with a particular political party." *Id.* at ¶ 39.

In this position, Plaintiff enjoyed many noneconomic and economic benefits, including "prestige, which increased [P]laintiff's employment opportunities and earning power," along with "career opportunities that included high earnings and

5

earning powers during and post-Allentown P[olice] D[epartment] employment."
*Id.* at ¶ 45. As Youth Division Sergeant, Plaintiff was "tasked with new and
unprecedented responsibilities," including "plan[ning] and implement[ing] a town
hall-style forum for the City's youth," as well as "establish[ing] and maintain[ing]
staffing for crossing guards," "develop[ing] mentoring programs in the schools
including Big Brothers and Big Sisters," "implementing additional referral sources
. . . for troubled youth," "develop[ing] and implement[ing] a merit-based matrix
system for the selection of new officers to the Youth Division," and "pioneer[ing]
and develop[ing] a new polygraph process for police applicants." *Id.* at ¶ 46.
Additional benefits for this position included "increased income and earnings
through overtime," and having a "steady day-work schedule with every weekend
and holiday off." *Id.* at ¶¶ 48-49. As a part of this position, Plaintiff had the "use
of a City-owned car with gas and maintenance benefits, for the use of the car
between home and work." *Id.* at ¶ 66.

 In January 2017, Plaintiff was approached by another employee
("Employee") in the Youth Division while both Plaintiff and Employee were off-
duty. *Id.* at ¶ 50. Employee informed Plaintiff that he was "considering to
campaign and run for mayor," and "asked the [P]laintiff for aid[ and] to provide an
opinion regarding any potential conflicts with employment by running for political
office." *Id.* Plaintiff alleges that, as it was not his duty or within his authority to

6

give advice regarding "allow[ing] an employee to run for political office," Plaintiff "merely provided his personal opinion only to" Employee. *Id.* at ¶ 51. Employee spoke to Plaintiff during this conversation about "running for political office" against the Mayor "under an opposing political party," as well as "the conduct of the [then-]current Allentown City Mayor, which [E]mployee believed he could improve." *Id.* at ¶ 52. Plaintiff alleges that he "affiliated with" Employee "and his political views and party," and responded to Employee that he "saw no basis why" Employee "could not run as a candidate for Mayor[] against [then-Mayor] Ed Pawloski, or speak on matters to the public in how improvement might be had in running City business." *Id.* at ¶ 55.

Over a month later, but before March 2017, Plaintiff alleges that Employee spoke with him a second time, again off-duty, explaining that "he was close to a decision about running for Mayor and going public." *Id.* at ¶ 56. "Plaintiff suggested the coworker speak with the [then-]Chief of Police for the City of Allentown," i.e. defendant Keith Morris, "about running for the Mayor's Office." *Id.* at ¶ 56. Plaintiff alleges that between mid-February and March 1, 2018, Employee "met with and had several discussions with defendant Morris," during which time Employee informed defendant Morris of Plaintiff's "affiliation and aid." *Id.* at ¶ 57. Although Morris told Employee that he had "no official position" on Employee running for Mayor, "Morris used language that made [Employee]

7

feel threatened and [that] there would [be] reprisal or retaliation if [Employee] ran for the Mayor's Office." *Id.* at ¶ 57. On February 23, 2017, Employee "gave a political speech, where he announced his candidacy for Mayor," which was "televised in the Allentown area," and "covered political issues and matters of public concern or interest." *Id.* at ¶ 58. On the morning of March 2, 2017, Captain Lake, Plaintiff's immediate supervisor, ordered Plaintiff to "appear before the [C]hief of [P]olice," Morris, without informing Plaintiff of the "reason to appear," and "escorted [Plaintiff] to" Morris's office. *Id.* at ¶ 62. When Plaintiff arrived at Morris's office, he found Morris, along with defendants Dorney and Struss. *Id.* at ¶ 63. Morris informed Plaintiff that it was his "last day in Youth Division," and that he was to "report to patrol and to Lt. Hill for the night shift on" March 8. *Id.* at ¶ 64. Plaintiff alleges that Morris, Struss, and Dorney conducted a "meeting regarding this decision before summoning" Plaintiff. *Id.* at ¶ 65.

After this meeting, "Plaintiff was removed from his Youth Division position and placed in patrol." *Id.* at ¶ 66. On patrol, Plaintiff "worked permanent midnights, and all or most holidays and weekends." *Id.* at ¶ 67. Plaintiff contacted Morris requesting "the transfer be made to a vacant day/middle shift patrol rotation versus steady night shift," and also "requested the transfer be made to a vacant sergeant's position at the police academy versus steady night shift," but both of these requests were denied "without explanation." *Id.* at ¶ 68.

8

Plaintiff consequently filed a grievance through the collective bargaining agreement for the position change, which the City opposed. *Id.* at ¶¶ 70-71. During this grievance process, Defendants claimed that Plaintiff was transferred for "three minor deficiencies," which Plaintiff alleges he proved untrue or suspect. *Id.* at ¶ 72. Plaintiff further alleges that Defendants were retaliating for his association with Employee. *Id.* at ¶ 73.

Plaintiff met with Dorney, who was at that time the new Police Chief, as well as with the City's Director of Human Resources, in order to discuss resolving the matter without a lawsuit in July, August, and September 2017. *Id.* at ¶ 75. During this time, defendants Dorney and Pawlowski met with the Director of Human Resources and the City Solicitor regarding the matter with Plaintiff. *Id.* at ¶ 76. Plaintiff also spoke directly with defendant Pawlowski. *Id.* at ¶ 77. In mid-September 2017, "the City through Pawlowski made an offer" to Plaintiff, which involved creating a new, potentially temporary, position in the Youth Division. *Id.* at ¶ 78. Before Plaintiff accepted this offer, "the City of Allentown and defendant Pawlowski instructed the new police chief Dorney and Human Resources Director to withdraw its offer to [P]laintiff and stop discussions with [P]laintiff." *Id.* at ¶ 79.

The Honorable Joseph F. Leeson dismissed Counts I (Retaliation in violation of the First Amendment), II (Pre-Deprivation Due Process claim), III (*Monell*

9

claim) and V (incorrectly labeled as Count IV) (Conspiracy in violation of 42

U.S.C. 1985(3)) without prejudice. Memorandum in Support of Order Granting

Motion to Dismiss ("Memorandum") (ECF No. 14). The Honorable Joseph F.

Leeson dismissed Count IV (incorrectly labeled as Count III) without leave to

amend. *Id.* Plaintiff filed an Amended Complaint (ECF No. 16) on August 23,

2018. Before the Court is Defendants' Motion to Dismiss the Amended Complaint

(ECF No. 17), Plaintiff's Response in Opposition to Defendant's Motion to

Dismiss (ECF No. 20), and Defendant's Reply (ECF No. 21).

Oral argument was held before Judge Kenney on January 3, 2019.

## IV.  DISCUSSION

The doctrine of qualified immunity was established to "balance[] two

important interests—the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably." *Pearson v.

Callahan*, 555 U.S. 223, 231 (2009). The doctrine was not intended to shield

public officials who use their public office conducting public affairs to retaliate

against a public employee under their supervision because the public employee

spoke and associated with someone who does not support their personal, private

interests. To allow a public official to wear the mantle of qualified immunity in

10

this situation eviscerates the purpose of the doctrine and turns a protection for a public official into a useful weapon against a public employee.

To find otherwise would mean that a public official could abuse their public trust and powers of office to wield wanton actions of personal vindictiveness and revenge against public employees whom they supervise. *Pearson* is premised on a balance of the public action exercised for the public good serving a public premise. Supervisory functions taken by public officials against public employees for purely personal reasons are not in the public interest. Thus, the presumed premise of *Pearson* does not exist here, because there is no public action to put on the scale to balance. However, even assuming a proper premise, applying the *Pearson* principles to this case, Defendants have failed to show how the facts alleged in the Complaint, taken as true and drawing all inferences in Plaintiff's favor, would allow Defendants to escape liability pursuant to the doctrine of qualified immunity at this stage of the litigation process.

The Court holds that Defendants' Motion to Dismiss for failure to state a claim is granted as to Plaintiff's pre-deprivation due process and *Monell* liability claims, but that Defendants' Motion to Dismiss Plaintiff's claims regarding retaliation in violation of the First Amendment and conspiracy under § 1985(3) is denied as to Morris and Pawlowski but granted as to Dorney, Struss, and the five John and five Jane Does. Furthermore, where, as here, Plaintiff has alleged that

11

Defendants intentionally retaliated against Plaintiff because of his political conversations with another employee, Defendants are not entitled to the protections of qualified immunity at this stage of the process.

## A. First Amendment Retaliation Claim

Plaintiff has alleged facts sufficient to support a First Amendment retaliation claim asserting a violation of free speech and freedom of association against Morris and Pawlowski on a motion to dismiss.

### *1. First Amendment Free Speech Claim*

To state a First Amendment retaliation claim under 42 U.S.C. § 1983 asserting a violation of free speech, "a plaintiff must establish: (1) he engaged in First Amendment protected activity, (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the adverse action was prompted by the plaintiff's protected activity." *Rossiter v. City of Phila.*, 674 F. App'x 192, 196 (3d Cir. 2016) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). For a public employee, such as a police officer, to fall under First Amendment protected activity, the individual must also show: (1) he "spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently'" than other persons of the general public. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir.

2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006)). As to whether the public employee "spoke as a citizen," the Court must make a practical inquiry into the "individual's official duties." *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009). The "claimant's speech might be considered part of his official duties if it relates to 'special knowledge' or 'experience' acquired through his job." *Id.* "Whether a person speaks as a citizen depends less on the subject matter—though that is relevant—than on the manner of speech, specifically whether the plaintiff is 'expected, pursuant to [his or her] job duties,' to make the speech that is at issue." *Jerri v. Harran*, 625 F. App'x 574, 580 (3d Cir. 2015).

The first prong requires that Plaintiff spoke as a citizen and not as a public employee, pursuant to his job duties. Defendants argue that Plaintiff's discussions with Employee regarding Employee's potential candidacy for Mayor were made in Plaintiff's official capacity as a sergeant of the Allentown Police Department and the Youth Division. Judge Leeson held in his Memorandum dismissing the Complaint that Plaintiff had not alleged a First Amendment retaliation claim because Employee had gone to Plaintiff "in his official capacity as the supervising officer in the Youth Division," and Plaintiff "not only cleared the subordinate officer to run for mayor while maintaining police employment but also referred him to the Chief of Police to confirm the finding, all in relation to his official role." Memorandum at 7 (ECF No. 14).

13

Plaintiff has amended the Complaint and added that both Plaintiff and Employee were off-duty when they were discussing the possibility of Employee running for Mayor. *See* Am. Compl. at ¶ 50. Plaintiff has additionally pled new facts regarding his actual duties as Sergeant of the Youth Division, which included staffing the crossing guards, developing mentoring programs, creating a system to select new officers, and developing a new polygraph process for police applicants. *Id.* at ¶ 46. Plaintiff further alleges that the Youth Division Sergeant position also includes duties such as "compulsory obedience to federal, state, and city laws," along with "Allentown City polices." *Id.* at ¶ 40.

At the motion to dismiss stage, Plaintiff has sufficiently pled facts alleging that he spoke to Employee as a citizen and not as a public employee. There are no allegations showing that Plaintiff had gained any "special knowledge" or "experience" through his job as Youth Division Sergeant relating to whether an employee of Youth Division could run for mayor. Furthermore, there are no allegations indicating that Plaintiff would have been expected, pursuant to his job duties, to make speech relating to the possibility of an employee running for mayor. Defendants characterize this advice as "related to their duties as police officers," but such a characterization is needlessly broad. Defs.' Mot. Dismiss at 12 (ECF No. 17). In fact, the communication between Plaintiff and Employee related to Employee's potential departure from the Allentown Police Department

14

to run for mayor in a party opposing the then-Mayor while Plaintiff and Employee were off-duty, which is "outside the course of performing [Plaintiff's] official duties." *Garcetti*, 547 U.S. at 423. Furthermore, Plaintiff alleges that he and Employee also discussed the "conduct of the current Allentown City Mayor, which [Employee] believed he could improve," while both Plaintiff and Employee were off-duty. Am. Compl. at ¶ 52. Plaintiff has adequately alleged that he spoke as a citizen with respect to the speech at issue.

Second, Plaintiff has adequately alleged that the speech at issue was of "public concern." "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003). "It seems likely that advocacy and support for ideas, principles and projects a Borough Mayor disfavored would involve a matter of public concern under this standard." *Hill*, 455 F.3d at 243. Plaintiff has alleged that he spoke to Employee regarding Employee's potential candidacy for Mayor. Am. Compl. at ¶ 50. Plaintiff further alleged that Employee planned to run as an opposing political party to the then-Mayor of Allentown's party, of which Plaintiff was also a supporter. *Id*. at ¶ 52. Plaintiff alleges the two also discussed the conduct of the then-current Mayor of Allentown, which Employee "believed he could improve."

15

*Id.* at ¶ 52. These facts are sufficient to find that the speech was related to a "public concern" at the motion to dismiss stage.

Lastly, "if an employee speaks as a citizen on a matter of public concern, the next question is whether the government had 'an adequate justification for treating the employee differently from any other member of the public' based on the government's needs as an employer." *Lane v. Franks*, 573 U.S. 228 (2014). The Supreme Court has "recognized that government employers often have legitimate 'interest[s] in the effective and efficient fulfillment of [their] responsibilities to the public,' including 'promot[ing] efficiency and integrity in the discharge of official duties,' and 'maintain[ing] proper discipline in public service.'" *Id.* (*quoting Connick v. Myers*, 461 U.S. 138, 149 (1983)). The Supreme Court "also cautioned, however, that 'a stronger showing [of government interests] may be necessary if the employee's speech more substantially involve[s] matters of public concern.'" *Id.* (*citing Connick*, 461 U.S., at 152). Defendants do not assert, and cannot demonstrate based on the facts alleged in the Amended Complaint, any government interest that tips the balance in their favor or any reason that retaliating against Plaintiff for his speech would promote efficiency or integrity in the discharge of official duties.

Thus, Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim based on free speech is denied as to Morris and Pawlowski.

16

Plaintiff, however, has not alleged facts to support the First Amendment retaliation claim based on free speech against Dorney, Struss, and the five John and five Jane Does, since there are no facts alleging that any of these defendants took, or had the authority to take, an "adverse action" against Plaintiff. Thus, the First Amendment retaliation claim based on free speech is dismissed as to Dorney, Struss and the five John and five Jane Does.

### 2. First Amendment Association Claim

"To make out a claim of discrimination based on political association, a public employee must allege (1) that the employee works for a public employer in a position that does not require a political affiliation, (2) that the employee maintained a political affiliation, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." *Hill*, 455 F.3d at 243 (*citing Goodman v. Pennsylvania Turnpike Com'n*, 293 F.3d 655, 663–664 (3d Cir.2002)). "[S]ome circuits apply the same rubric [as those involving speech] to cases involving the associational rights of public employees. This is especially true when an employee's freedom of association claim 'implicate[s] associational rights in essentially the same way and to the same degree' as his free speech claim." *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018) (*citing Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992) ("We hold . . . that *Connick* governs [the plaintiff's] freedom of

17

association claim because that claim is based on speech that does not implicate associational rights to any significantly greater degree than the employee speech at issue in *Connick*.").

Judge Leeson initially denied Plaintiff's claim for First Amendment retaliation based on Plaintiff's right to freedom of association because "the Complaint is devoid of any allegations to suggest that Williams agreed with the [Employee's] political views." Memorandum at n.7 (ECF No. 14). In the Amended Complaint, Plaintiff alleges that he "affiliated with" Employee "and his political views and party," and provided advice to Employee regarding whether Employee could run for Mayor of Allentown against Ed Pawlowski, then-Mayor, or speak to the public regarding improving how the City of Allentown business is run. Am. Compl. at ¶ 55. These allegations are sufficient to survive a motion to dismiss for Plaintiff's claim of retaliation based on Plaintiff's freedom of political association. Thus, as above, Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claim based on freedom of association is denied as to Morris and Pawlowski but granted as to Dorney, Struss, and the five John and five Jane Does.

### B. Pre-Deprivation Due Process Claim

Under Count II, Plaintiff alleges that he was actively or constructively demoted in rank when he was removed from his position as Youth Division

18

Sergeant and placed in patrol based on the reduction of duties and privileges, without having been afforded a "pre-discharge due process of law." Am. Compl. at ¶ 117. Defendants argue that Plaintiff was not entitled to any due process prior to his removal from his position as Youth Division Sergeant because this job change did not deprive him of any protected property or liberty interest. Defs.' Mot. Dismiss at 15 (ECF No. 17).

Both Plaintiff and Defendants agree that Plaintiff has a property interest in his job as a police officer, such that Plaintiff cannot be terminated, suspended, or reduced in rank without some type of pre-deprivation procedures. *See Wardlaw v. City of Philadelphia*, No. 09-3981, 2011 WL 1044936, at *5 (E.D. Pa. Mar. 21, 2011) (finding that state law determines whether a property interest is present in government employment and that a plaintiff may argue constructive reduction in rank in place of actual reduction in rank) ("[M]unicipal police officers have a property interest in continued employment.")[3] However, Defendants argue that Plaintiff's removal from Youth Division to patrol does not constitute an actual or constructive reduction in rank, also referred to as an actual or constructive

---

[3] This property interest arises from the Police Tenure Act ("Act"). 53 Pa.C.S. §§ 811-816. This Act protects police officers from suspension, termination, or reduction in rank except for specific reasons. See *Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989) (holding that a police officer's property interest is embedded in the Police Tenure Act).

demotion, which would implicate due process rights. Defs.' Mot. Dismiss at 16 (ECF No. 17); *see Wardlaw*, 2011 WL 1044936, at \*7.

The Fourteenth Amendment of the Constitution restricts a state from "depriving persons of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. To state a violation of procedural due process under 42 U.S.C. § 1983, a two-part analysis is applied: (1) whether the individual's interest is protected under the Fourteenth Amendment as life, liberty, or property, and (2) whether the pre-deprivation procedures provided complied with due process of law. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Procedural due process adapts to the situation at hand. *See Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (holding that due process is flexible for the situation and that pre-deprivation hearings need not always be held).

Despite alleging that he was "actually or constructively discharged," Plaintiff was simply moved from the Youth Division to patrol, but he was not terminated or suspended from the Allentown Police Department. Am. Compl. at ¶ 116. Nor has Plaintiff alleged that Defendants made his working environment so intolerable that he was forced to quit. *See Hill*, 455 F.3d at 246 ("[A]s a matter of state law, no government employee or body is permitted to constructively discharge an employee by making his working environment intolerable."). Thus, Plaintiff only has a protected property interest if he suffered a reduction in rank.

20

*See Wardlaw*, 2011 WL 1044936, at \*5 (holding a police officer's property interest can be deprived through termination, suspension, or reduction in rank). A reduction in rank can be either actual or constructive. *See Guarnieri v. Duryea Borough*, No. 3:05-CV-1422, 2007 WL 4085563, at \*6 (M.D. Pa. Nov. 15, 2007) (citing *Clark*, 890 F.2d at 617). An *actual* reduction in rank is demonstrated through a change in job title. *Clark*, 890 F.2d at 618. To determine whether there was a *constructive* reduction in rank, i.e., when there is no such alteration in job title, the court must look to other "traditional indicia of change of rank," including change in pay, alteration of duties that are usually assigned to a lower rank, reduced responsibilities, termination of privileges of rank, and whether the changes are permanent or temporary. *Id.*

Judge Leeson previously held that because Plaintiff's job title did not change, in that he remained a sergeant, and because his salary did not change, Plaintiff's allegations regarding lost opportunity for overtime pay, lost use of a city-owned vehicle and gas card, assignment to night shift and holiday work, and removal from a prestigious position did not amount to a constructive reduction in rank. Memorandum at 12 (ECF No. 14) (*citing Skrutski v. Marut*, 288 F. App'x 803, 808 (3d Cir. 2008) (holding police officer did not have a protected property interest in the loss of overtime); *Cotner v. Yoxheimer*, No. 1:07-cv-1566, 2008 U.S. Dist. LEXIS 51388, at \*30-33 (finding that an office who was unable to take his

police vehicle home on his days off, was assigned to more night shifts than any other officer, and had numerous responsibilities removed, was not constructively discharged); *Henry v. City of Allentown*, No. 12-1380, 2013 U.S. Dist. LEXIS 172792, at 12-13 (E.D. Pa. Dec. 5, 2013) (holding that assignment to undesirable duties does not constitute constructive demotion if duties not of the sort normally given to a lower rank); *Satterfield v. Borough of Schuykill Haven*, 12 F. Supp. 2d 423, 433-34 (E.D. Pa. 1998) (holding that reputation alone is not a protected interest and that defamation in the termination of employment may, in some circumstances, trigger the right to a hearing)).

In the Amended Complaint, Plaintiff has added only that he had new and unprecedented responsibilities in his position as Youth Division Sergeant, including "plan[ning] and implement[ing] a town hall-style forum for the City's youth," "establish[ing] and maintain[ing] staffing for crossing guards," "develop[ing] mentoring programs in the schools including Big Brothers and Big Sisters," "implementing additional referral sources . . . for troubled youth," "develop[ing] and implement[ing] a merit-based matrix system for the selection of new officers to the Youth Division," and "pioneer[ing] and develop[ing] a new polygraph process for police applicants." *Id.* at ¶ 46. Although Plaintiff alleges that he no longer had these duties on patrol, there are no allegations that he was "deprived of all real job responsibilities." *Wardlaw*, 2011 WL 1044936 at *5. Nor

22

does Plaintiff plead that his duties after being reassigned to patrol were "normally given to employees of a lower rank." *Id.* The allegations in the Complaint remain insufficient to show either actual or constructive reduction in rank. Thus, Plaintiff has failed to show that he had a protected property interest to entitle him to pre-deprivation due process protection.

The Court further agrees with Judge Leeson that even if Plaintiff had shown a protected property interest, he would not be automatically entitled to a pre-deprivation hearing under *Loudermill*. Memorandum at 13 (ECF No. 14) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985) (holding that when a pre-deprivation hearing is required, the hearing need not absolutely resolve the deprivation; rather, it must provide a preliminary check on the situation and disputing sides—the hearing is to determine whether "there are reasonable grounds to believe that the charges against the employee are true and support the proposed action"); *Schmidt v. Creedon*, 639 F.3d 587, 589-90 (3d Cir. 2011) (holding only that a police officer is entitled to a hearing pre-suspension and pre-termination)).

As Judge Leeson stated:

[I]n determining what process is due, the court balances the private interests affected by the action, the risk of erroneous deprivation, and the government's interest, including fiscal and administrative burdens, that additional or substitute procedures entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Considering that Williams remained employed without a reduction in salary, his interests were insubstantial. *See Guarnieri*, 2007 U.S. Dist LEXIS 84580, at *19-20

23

(finding that if the police chief had a protected property interest, he was not entitled to a pre-deprivation hearing because his interest in the duties and responsibilities of his job was insubstantial). On the other side of the balance, the City "has an interest in deciding how to operate its police force." *Cope*, 2018 U.S. Dist. LEXIS 42815, at *20-21. Additionally, the risk of erroneous deprivation was low because Williams had access to the grievance process in the collective bargaining agreement, which he used. *See id.* at *21-22; Compl. ¶ 44. Due process therefore did not require a pre-deprivation hearing.

Memorandum at 13-14 (ECF No. 14)

Thus, Plaintiff's due process claim is dismissed.

## C. *Monell* Liability

Plaintiff alleged in the Amended Complaint that Defendants Morris and Pawlowski have created liability for the City of Allentown under the Single Act Theory for "actual[ly] or constructive[ly] discharg[ing] [P]laintiff from Youth Division Sergeant," and that Morris, Pawlowski, Struss, and Dorney have created liability on behalf of the City of Allentown by removing Plaintiff from his Youth Division Sergeant position without a "meaningful pre-loss procedural due process of law." Am. Compl. at ¶¶ 125-126. Despite amending the Complaint, as Judge Leeson noted, it is still not clear on what constitutional violation the *Monell* claim is based, since the decision to remove Plaintiff from the Youth Division is the subject of the First Amendment retaliation claim and the alleged denial of a pre-derivation hearing before Plaintiff was removed from the Youth Division is the procedural due process right at issue. Memorandum at 16-17 (ECF No. 14).

24

Defendants argue that Plaintiff failed to allege a *Monell* claim because Plaintiff has not pled the existence of any relevant municipal policy or custom, there are insufficient allegations showing any violation of 42 U.S.C. § 1983, and there are no allegations indicating that any such violation was the *result* of an Allentown employee acting pursuant to a municipal policy or custom. *See* Defs.' Mot. Dismiss at 19-21 (ECF No. 17). Plaintiff argues in response that he has set forth plausible claims of a § 1983 violation and that a custom or policy existed based on a "single act" of Pawlowski or Morris, which constituted removing him as Youth Division Sergeant and reassigning him to patrol. Pl.'s Opp. 43 (ECF No. 20). The Court agrees with Defendants and the Honorable Joseph F. Leeson that Plaintiff has failed to state a § 1983 claim against the City of Allentown under *Monell*.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. "A municipal policy, for purposes of Section 1983, is a statement,

25

ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690). A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690. The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("Mere assertion of an entitlement to relief, without some factual 'showing,' is insufficient under Fed. R. Civ. P. 8(a)(2).").

To hold a municipal defendant liable under § 1983 for a single act, the plaintiff must show that: (1) the act violating a constitutional right was officially sanctioned or ordered by the city itself; (2) the municipal official executing the action had final policymaking authority, as determined by state law; and (3) "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). In establishing final policymaking authority pursuant to state law, the plaintiff must show that the official's decisions are "final and unreviewable." *Hill*, 455 F.3d at 245-46.

Initially, as the Court has held that Plaintiff has failed to state a

constitutional violation of pre-deprivation procedural due process, Plaintiff cannot

attempt to hold the municipal liable for any such violation. *See Reilly v. Leb.

Cnty.*, No. 16-1469, 2016 U.S. Dist. LEXIS 176999, at \*15 (M.D. Pa. Dec. 21,

2016). Thus, the *Monell* claim must rely on Plaintiff's First Amendment

retaliation claim. However, as the Honorable Joseph F. Leeson previously held,

Plaintiff has failed to allege facts sufficient to make out a *Monell* claim under the

single act theory for the First Amendment retaliation claim.

First, Plaintiff alleges that Morris and Pawlowski were the "final decision-

makers" who decided to remove Plaintiff from the Youth Division, and thus the

City of Allentown is liable based on this single act. Am. Compl. at ¶ 125. While

Morris, as Police Chief, would not likely be considered the final policymaker,[4] the

Amended Complaint alleges that Morris and Pawlowski, then-Mayor, worked

together to retaliate against Plaintiff based on his speech and political association.

Am. Comp. at ¶ 135. Pawlowski, as then-Mayor, is the final policymaker as to the

police department, with "final and unreviewable" authority and the potential to

---

[4] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) ("In any event, as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker."); *but see Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010) ("An employee who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified his decision.").

27

hold the City of Allentown liable under § 1983 for a single act. *See* 11 Pa.C.S.A. §

12001 ("Council [composed of the mayor and council members] shall fix, by

ordinance, the number, grades and compensation of the members of the city police

force."); 11 Pa.C.S.A. § 12007 (providing that "[t]he chief of police shall obey the

orders of the mayor"); *see also Bennis v. Gable*, 823 F.2d 723, 733 (3d Cir. 1987)

("It is undisputed that the City's sole authorized decision maker on promotions and

demotions within the police department is the mayor.") (*citing* 11 Pa.C.S.A. ¶

12002 formerly cited as 53 Pa.Stat.Ann. § 37002). Furthermore, Plaintiff's

allegations regarding Pawlowski's involvement at the grievance stage are sufficient

for the Court to infer that he was also involved when Plaintiff was removed from

the Youth Division.

However, Plaintiff has failed to adequately plead facts to show that the

"challenged action [was] taken pursuant to a policy adopted by the official or

officials responsible under state law for making policy in that area of the city's

business." *Praprotnik*, 485 U.S. at 123. Plaintiff has alleged no facts

demonstrating how the single act of removing him from the Youth Division and

placing him in patrol in retaliation for his speech and political association was

taken pursuant to any policy or custom or how, from this single act, a policy or

custom could be inferred. Thus, the *Monell* claim is dismissed.

28

## D. Conspiracy under §1985

Plaintiff finally alleges that Defendants Morris, Pawlowski, Dorney, and Struss conspired together to deprive him of his constitutional rights by removing him from the Youth Division and additionally preventing his reinstatement. Am. Compl. at ¶¶ 132-137. In the original Complaint, Judge Leeson found that Plaintiff failed to "allege any facts, whether particular or generalized, that plausibly allege any meeting of the minds between Defendants." Memorandum at 21 (ECF No. 14). In the Amended Complaint, Plaintiff alleges that Defendant "came to a meeting of the minds through words and deeds as described above on or about February and to September 2017 . . . agree[ing] that one or all would retaliate against the plaintiff and deprive the plaintiff of federal rights." Am. Compl. at ¶¶ 132-133. This Court finds that Plaintiff sufficiently alleges facts in the Amended Complaint to support a 1985(3) claim of conspiracy on a motion to dismiss.

Section 1985(3) states that a conspiracy arises when "two or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3). To assert a prima facie claim of conspiracy, a plaintiff must plausibly allege facts that show (1) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful

means or for an unlawful purpose," (2) "an overt act done in pursuance of the common purpose," and (3) "actual legal damage." *Schlichter v. Limerich Twp.*, No. 04-CV-4229, 2005 WL 984197, at *10 (E.D. Pa. Apr. 26, 2005).

A plaintiff must assert "specific factual allegations of combination, agreement, or understanding among all or between any defendants to plot, plan, or conspire to carry out the alleged chain of events." *Germantown Cab Co. v. Philadelphia Parking Auth.*, No. 14-4686, 2015 WL 4770722, at *10 (E.D. Pa. Aug. 12, 2015) (quoting *Hammond v. Creative Fin. Planning Org.*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)). A complaint must allege particular and exacting facts that demonstrate the "period of the conspiracy, object of the conspiracy, and certain other actions of the alleged conspirators to achieve the purpose." *Id.* (*quoting Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)); *see also Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (holding that a plaintiff must allege facts that plausibly suggest a meeting of the minds).

As the Court has maintained the First Amendment retaliation claim, Defendants' argument that Plaintiff has not stated a deprivation of a federal right fails at this time. Defs.' Mot. Dismiss at 22 (ECF No. 17). Furthermore, Plaintiff has alleged sufficient facts for the Court to plausibly infer that Defendants Morris and Pawlowski conspired together to remove Plaintiff from the Youth Division based on Plaintiff's discussion with and support of Employee in potentially

30

running for mayor in opposition to Pawlowski. Plaintiff has alleged that Morris was informed that Plaintiff had discussed with and supported Employee's potential bid for mayor. Am. Compl. at ¶ 57. Plaintiff has alleged that Morris removed Plaintiff from the Youth Division only one week after Employee gave his televised political speech announcing his candidacy for mayor against Pawlowski. Am. Compl. at ¶¶ 58-64. Plaintiff additionally alleged that Defendants Morris and Pawlowski were involved with the grievance process as well as with the proffer of a settlement offer, which Pawlowski ultimately revoked. *Id.* at ¶¶ 72-79. Plaintiff has further alleged that, "[a]t the time of [P]laintiff's speech. . . Morris was seeking advancement in employment and pay increase from the City of Allentown . . . from Pawlowski," and that Morris "supported . . . Pawlowski's mayoral re-election effort." *Id.* at ¶ 89-90.

Drawing all inferences in Plaintiff's favor, and based on the additional allegations pled in Amended Complaint, Plaintiff has sufficiently pled that Morris and Pawlowski acted together with the common purpose of retaliating against Defendant for his communications with and support of Employee in running for mayor against Pawlowski and removed Plaintiff from the Youth Division in pursuance of this common purpose. Plaintiff has sufficiently alleged the "period of the conspiracy," which includes the date Morris learned of Plaintiff's aid and association through the time that Pawlowski withdrew the settlement offer, *id.* at ¶

31

¶ 57, 79; the "object of the conspiracy," to retaliate against Plaintiff for his communications with and support of Employee in running against Pawlowski for mayor; and "certain other actions of the alleged conspirators to achieve the purpose of the conspiracy," including Morris refusing Plaintiff's request to be transferred to other vacant day shifts without explanation and Pawlowski withdrawing the settlement offer. *Id.* at ¶¶ 68, 79; *see Germantown Cab Co. v. Philadelphia Parking Auth.*, No. 14-4686, 2015 WL 4770722, at \*10 (E.D. Pa. Aug. 12, 2015). These facts are sufficient to state a claim for conspiracy to violate Plaintiff's First Amendment rights on a motion to dismiss against Morris and Pawlowski.

However, even construing all reasonable inferences in a light most favorable to Plaintiff, Plaintiff has not sufficiently stated a claim for conspiracy against Dorney, Struss, or the five John and five Jane Does. The only relevant allegations pertaining to Dorney and Struss are that: Dorney and Struss "had a . . . meeting" with Morris regarding removing Plaintiff from the Youth Division, *id.* at ¶ 64; Dorney and Struss were in Morris's office when Morris removed Plaintiff from the Youth Division, *id.* at ¶ 65; Dorney and Struss, along with Morris, stated during the grievance proceedings that Plaintiff "was transferred for three minor deficiencies," *id.* at ¶ 72; Dorney and Struss used their position to support Morris in his decision to remove Plaintiff from the Youth Division, *id.* at ¶ 136; Dorney met with Plaintiff and other defendants during the negotiation period, *id.* at ¶¶ 75,

32

76, 78; and Dorney and Struss were two of Plaintiff's supervisors, *id.* at ¶ 87. The only relevant allegations regarding the five John and five Jane Does are that they knowingly provided "inaccurate [and] untrue []misrepresentation[s]" regarding City of Allentown ordinances controlling the use of a City of Allentown car, which "induce[d] the plaintiff to end CBA grievance and stop arbitration." *Id.* at ¶ 137.

None of these allegations are "specific factual allegations of combination, agreement, or understanding" between Dorney, Struss, the five John and five Jane Does and the other defendants "to plot, plan, or conspire to carry out the alleged chain of events." *Germantown Cab Co.*, 2015 WL 4770722, at *10. Plaintiff has not alleged how Dorney, Struss or the five John and five Jane Does took any "overt acts" in pursuance of the common purpose of removing Plaintiff from the Youth Division except in allegedly supporting Morris and Pawlowski, who had the ultimate authority to remove Plaintiff from the Youth Division. *See supra* at 27-28. The Complaint shows that Dorney, Struss, and the five John and five Jane Does could only, and did only, advise Morris and Pawlowski at the time of Plaintiff's removal from the Youth Division[5] and does not allege that they were able to or did independently take any adverse action against Plaintiff.

---

[5] Although Plaintiff alleges that Dorney was the Chief of Police for the Allentown Police Department at some point after Plaintiff was removed from the Youth Division and before the end of the grievance process, Dorney was an Assistant Chief of Police at the time of Plaintiff's removal. Am. Compl. ¶¶ 65, 75.

33

Thus, Defendants' Motion to Dismiss Plaintiff's claim of conspiracy under §

1985(3) is denied as to Morris and Pawlowski but granted as to Dorney, Struss,

and the five John and five Jane Does.

### E. Qualified Immunity

Lastly, Defendants argue that they are entitled to qualified immunity on all

claims because Plaintiff's right to freedom of speech and political association are

not so "clearly established" and "[t]here do not appear to be any cases that have

indicated that the transfer experienced by Plaintiff implicates free speech or

association rights in any way." Defs.' Mot. Dismiss at 25 (ECF No. 17).[6]  The

Court finds that the Defendants are not entitled to qualified immunity on the

remaining claims at the motion to dismiss stage.

Although qualified immunity is an affirmative defense, "a complaint may be

subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on

its face. Thus, qualified immunity will be upheld on a 12(b)(6) motion only when

the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258

F.3d 156, 161 (3d Cir.2001) (quotations and citations omitted).  In order to

---

[6] We do not consider Defendants' qualified immunity arguments for the 14th amendment pre-deprivation due process and *Monell* claims since this Court has granted Defendants' Motion to Dismiss as to these claims and dismissed them.  *See* Memorandum at n.5 (*citing Spell v. Allegheny County Admin.*, No. 14-1403, 2015 U.S. Dist. LEXIS 36903, at *17-18). Furthermore, as the conspiracy claim is premised on a violation of Plaintiff's First Amendment rights, the same analysis regarding qualified immunity of the conspiracy claim follows.

34

determine whether Defendants are entitled to qualified immunity, the Court must first "decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right," and also "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (holding that Courts should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") To determine whether the constitutional right was "clearly established" at the time of the misconduct, "it is not necessary that there have been a previous precedent directly in point." *Good v. Dauphin Cty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Id.*

The Court has already determined that Plaintiff has alleged facts sufficient to state a claim for retaliation in violation of his First Amendment right to freedom of speech and association, satisfying the first prong of the qualified immunity analysis. As to the second prong, accepting the allegations in the Amended Complaint as true and drawing all inferences in Plaintiff's favor, the Court finds

that the "illegality of the [Defendants'] actions was sufficiently clear that they can fairly be said to have been on notice of the impropriety of their actions." *McGreevy v. Stroup*, 413 F.3d 359, 366–67 (3d Cir. 2005) (internal quotation marks omitted).

The Third Circuit has recognized that retaliation against a public employee for exercising his or her rights under the First Amendment violates clearly established law. *See Schleig v. Borough of Nazareth*, 695 F. App'x 26, 31 (3d Cir. 2017) (holding that a police officer who retaliated against employee by threatening to injure or kill the employee based on that employee's participation in a labor union violated clearly established law); *Baldassare v. State of N.J.*, 250 F.3d 188, 201 (3d Cir. 2001) ("[A]s of 1982 the law was 'clearly established' that a public employee could not be demoted in retaliation for exercising his rights under the first amendment."); *Reilly v. City of Atl. City*, 532 F.3d 216, 233 (3d Cir. 2008) ("The Pickering balancing test [,the test to evaluate a public employee's First Amendment retaliation claim,] was clearly established at the time of the alleged retaliation, as was the notion of pretextual discipline in the context of a First Amendment retaliation claim."); *McGreevy*, 413 F.3d at 367 (3d Cir. 2005) (holding that the law was clearly established for qualified immunity purposes where defendants could not proffer any "legitimate countervailing interests in limiting [plaintiff's] speech.") .

The Supreme Court has further held that "qualified immunity would be defeated if an official . . . 'took the action with the malicious intention to cause a deprivation of constitutional rights or other injury.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Furthermore, the Third Circuit has found that qualified immunity does not apply where "Defendants have not proffered any legitimate countervailing interests in limiting [plaintiff's] speech." *McGreevy*, 413 F.3d at 366–67. "When the balance of cognizable interests weighs so heavily in an employee's favor, our cases make plain that the law is clearly established." *Id.* *(citing Czurlanis v. Albanese*, 721 F.2d 98, 107 (3d Cir.1983) (holding that county employees' speech at board meeting was constitutionally protected because it was a matter of public concern and because the county was unable to set forth a sufficient countervailing interest); *Monsanto v. Quinn*, 674 F.2d 990, 999 (3d Cir.1982) (holding that internal revenue department employee's speech was constitutionally protected because it was a matter of public concern and because no substantial disruption was alleged); *Trotman v. Bd. of Tr.*, 635 F.2d 216 (3d Cir.1980) (reversing motion to dismiss for defendants and holding that faculty member's criticism of university president constituted core speech)).

Here, Plaintiff has alleged that Defendants retaliated against Plaintiff based on his communications with another employee involving a matter of public concern, which included discussing with and advising an employee of the Youth

Division as to whether the employee could run for mayor for the opposing party of then-Mayor Pawlowski, in opposition to Pawlowski. Plaintiff has sufficiently alleged facts such that reasonable officials in the Defendants' position could not have believed that retaliating against Plaintiff based on these communications would be lawful. As previously stated, it has been clearly established that a public official cannot retaliate against a public employee for exercising his rights under the First Amendment, which here include discussing Employee's candidacy in a political race against Pawlowski, then-Mayor, as well as how to improve running the City of Allentown. In this matter, as in *Pro v. Donatucci*, "[t]he state had no legitimate interest in regulating this speech to 'promot[e] the efficiency of the public services it performs through its employees.'" 81 F.3d 1283, 1291 (3d Cir. 1996) (*citing Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968)). Nor are there any legitimate countervailing interests that Defendants could have had, as alleged in the Complaint, for retaliating against Plaintiff based on this speech or political affiliation. *See McGreevy*, 413 F.3d at 366. Finally, as Defendants have claimed qualified immunity at the motion to dismiss stage, "factual development through discovery" will allow the Court to determine whether this "defense may well lend itself to resolution at summary judgment." *Hill*, 455 F.3d at 244–45. Thus, the Court holds

that Defendants are not entitled to qualified immunity for the remaining claims at
this time.

## V.   CONCLUSION

For the reasons stated above, the Court denies in part and grants in part
Defendants' Motion to Dismiss the Amended Complaint (ECF No. 17).  The Court
grants Defendants' Motion to Dismiss as to Counts II (Pre-Deprivation Due
Process) and III (*Monell* Liability).  The Court further grants Defendants' Motion
to Dismiss as to Counts I (First Amendment Retaliation) and IV (Conspiracy under
1985(3)) for defendants Dorney, Struss, and the five John and five Jane Does.  The
Court denies Defendants' Motion to Dismiss as to Counts I (First Amendment
Retaliation) and IV (Conspiracy under 1985(3)) for defendants Morris and
Pawlowski.

DATED:  $\partial - | 1 - \partial o 1^9$

BY THE COURT:

CHAD F. KENNEY, JUDGE